In the Matter of EDWARD DUNAY, Appellant, v STEPHEN S. WEISGLASS et al., Respondents.

First Department, January 22, 1981

APPEARANCES OF COUNSEL

*Joel H. Blumkin* of counsel *(Anthony S. Genovese* and *Laurence May* with him on the brief; *Kissam, Halpin & Genovese*, attorneys), for appellant.

*Steven J. Glassman* of counsel *(Barry P. Schwartz* with him on the brief; *Kaye, Scholer, Fierman, Hays & Handler*, attorneys), for Stephen S. Weisglass and another, respondents.

OPINION OF THE COURT

YESAWICH, JR., J.

Petitioner Edward Dunay appeals from the denial of his motion for an order permanently staying arbitration before the New York Stock Exchange demanded by respondents Stephen S. Weisglass and Ronald B. Koenig. Arbitration was requested to resolve the latters' claims

of ownership to shares of Ladenburg, Thalmann & Co., Inc. (hereafter Ladenburg) common stock.

The parties to this proceeding, Dunay, Weisglass and Koenig, purportedly entered into a joint venture to form a brokerage entity. To enhance their business opportunities they affiliated with Ladenburg, an established brokerage firm. Thereafter Dunay, who had become president of Ladenburg, purchased in his own name 13,500 shares of Ladenburg's common stock to be held for the benefit of the coventurers. Any gain realized from a sale of the stock was to be apportioned equally, provided that at the time of the sale the parties were in Ladenburg's employ and the circumstances of their arrangement were substantially the same.

Dunay's employment with Ladenburg ended May 10, 1979 after which he instituted suit in New York County against respondents, as well as others, for a declaration of the parties' rights in the claimed joint venture, an accounting of the venture's dealings and transactions, and a direction that its property be equitably divided between Dunay, Weisglass and Koenig. In that suit Dunay charged that sometime prior to April 30, 1979, and unbeknown to him, Koenig and Weisglass had breached their fiduciary duty as joint venturers.

To assure continued orderly management and growth of Ladenburg, a stockholders agreement, entered into in 1977 between Ladenburg and its shareholders, prescribed the terms under which a stockholder could sell his shares. Pursuant to that agreement, and representing the shares to be his alone, Dunay delivered the stock certificates to Ladenburg for safekeeping pending the latter's repurchase of the shares. In an effort to enforce their alleged part ownership of these shares, respondents sought to submit the issue of ownership to arbitration. Dunay's unsuccessful petition to stay that arbitration followed.

Ladenburg's posture is that of a stakeholder. It takes no position with respect to the attempted stay.

A threshold issue is the timeliness of the stay application. Adverting to themselves and Dunay as allied members of

the Exchange and hence bound by its arbitration procedures, Weisglass and Koenig wrote the Exchange requesting that their claims to the Ladenburg stock be arbitrated. Their request for arbitration was not actually received by petitioner until Sunday, January 13, 1980, upon his return from a business trip outside New York State. Measured from that date, his February 4, 1980 stay application was timely. (Cf. *Monarch Ins. Co. v Pollack*, 32 AD2d 819.) While the return receipt card furnished respondents indicates the arbitration request was delivered to petitioner's residence on January 10, 1980, Dunay's averment that the person who apparently signed the return receipt card was neither his agent nor authorized to accept certified mail stands uncontroverted.

There is a further reason why the motion to stay arbitration was seasonable. A demand for arbitration or a notice of intention to arbitrate may contain the caveat that unless the party served applies to stay arbitration within 20 days after such service he will be precluded from questioning the arbitrability or timeliness of the dispute. *(Matter of Liberty Mut. Ins. Co. v Keane*, 28 AD2d 703.) As one authority has observed, because the failure of a party to make a timely response to the 20-day demand can have serious implications, the arbitration notice must comply with the letter of the law. (McLaughlin, Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR, C7503:11, p 15, 1980-1981 Pocket Part.) Inasmuch as the request to arbitrate lacks this warning, petitioner cannot be said to have waived his right to seek a stay, even if it be deemed that he was served on January 10, 1980. This conclusion is buttressed by the desirable rule of conduct that one who exacts from another strict compliance with the standards of practice as a condition to preserving the latter's rights must himself adhere to those standards. (See *Sleepy Hollow Dev. & Community Improvement Housing Dev. Fund Co. v De Angelis*, 51 AD2d 267.)

In addition to being timely, the petition justifies staying arbitration. The Exchange's Constitution, at paragraph 1351, provides: "Any controversy between parties who are * * * allied members * * * shall, at the instance of any such

party, and any controversy between a non-member and * * * allied member * * * arising out of the business of such * * * allied member * * * shall, at the instance of such non-member, be submitted for arbitration". While any controversy between allied members is arbitrable *(Osborne & Thurlow v Hirsch & Co.,* 10 Misc 2d 225), the controversy must emanate from a business relationship which arose during their mutual membership in the Exchange. *(Isaacson v Hayden, Stone, Inc.,* 319 F Supp 929.)

The jurisdictional basis underlying the request for arbitration is that Dunay, Weisglass and Koenig were allied members of the Exchange. However, Dunay was an allied member only until May 10, 1979 when he ceased being Ladenburg's president (see New York Stock Exch Const, par 1003) and Weisglass and Koenig did not achieve allied membership status until sometime later. As there was never a period of mutual membership the controversy is not arbitrable on this basis.

It has been suggested that we also treat this dispute as a nonmember controversy. Doing so would not alter the result for an Exchange member is not obliged to arbitrate a nonmember claim unless it arose out of the member's business. Here, significantly, the stock was purchased by Dunay in his capacity as a joint venturer while engaged in the business of the parties' joint enterprise; its purchase was not a product of his business affiliation with the Exchange. The mere facts that formal purchase and transfer of the shares were made in his name while an allied member do not, without more, demonstrate that his pretension to ownership derives from any Exchange activity undertaken by him.

Neither does the arbitration clause contained in the stockholders agreement require this dispute to be submitted to arbitration for the record reveals it was not even alleged below that Weisglass or Koenig was a party to that agreement. Inasmuch as arbitration depends upon the agreement of the parties, and it was not established that any such agreement was present here, arbitration is inappropriate. *(Matter of Kaye Knitting Mills [Prime Yarn Co.],* 37 AD2d 951.)

Judgment, Supreme Court, New York County (KIRSCH-ENBAUM, J.) entered June 2, 1980 denying petitioner's motion to stay arbitration and directing the parties to proceed to arbitration unanimously reversed, on the law, with costs and the arbitration demanded by respondents is permanently stayed.

ROSS, J. P., MARKEWICH, SILVERMAN and BLOOM, JJ., concur.

Judgment, Supreme Court, New York County, entered on June 2, 1980, reversed, on the law, and the arbitration demanded by respondents is permanently stayed. Appellant shall recover of respondents one bill of $50 costs and disbursements of this appeal.