**Denis P. KELLEHER, Plaintiff,**

v.

**Seymour REICH, Edward L. Grayson, Discount Brokerage Corporation and TBK Partners, Ltd., Defendants.**

**No. 80 Civ. 6417 (PNL).**

United States District Court,
S. D. New York.

Feb. 22, 1982.

Order Feb. 24, 1982.

---

Thomas H. Moreland, Kramer, Levin, Nessen, Kamin & Soll, New York City, for plaintiff.

James K. Manning, Judith Ann Welcom, Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendants.

### ORDER

LEVAL, District Judge.

My opinion of June 19, 1981, upon which my order of July 27, 1981, is based, is hereby replaced by the opinion I file today. The new opinion reflects the New York Court of Appeals reversal of *Dunay v. Weinglass*, 78 A.D.2d 444, 435 N.Y.S.2d 265 (1981), as well as correction of typographical errors.

SO ORDERED.

### OPINION AND ORDER

Plaintiff brings this action under the federal securities laws, with pendant New York State statutory and common law claims. Plaintiff seeks rescission of a voting trust agreement, restitution of certain common stock, reinstatement to his position as President of defendant Discount Brokerage Corporation (or, in the alternative, damages), and compensatory and punitive damages.

The defendants have moved for a stay pending arbitration, pursuant to 9 U.S.C. § 3, and for an order directing the parties to arbitrate. Plaintiff contends that all, or at least part, of this action is not properly arbitrable.

Defendants have demonstrated that the issues in this action should be referred to arbitration. *See Nederlandse Erts-Tankersmaatchappij, N. V. v. Isbrandtsen Co.,* 339 F.2d 440, 441 (2d Cir. 1964); *Miletic v. Holm & Wonsild,* 294 F.Supp. 772, 775 (S.D.

N.Y.1968). Defendants' motion is therefore granted. 9 U.S.C. §§ 2, 3 (1976).

*Allegations in Plaintiff's Complaint*[1]

The facts, as alleged in the complaint, are as follows:

Defendant Discount Brokerage Corporation, organized in 1976, is a brokerage firm that buys and sells securities, charging discounted commission rates. It is a member corporation of the New York Stock Exchange (N.Y.S.E.). Plaintiff was its Chief Executive Officer. In October of 1976, plaintiff and defendants Reich and Grayson and others contributed capital to Discount and received shares of its common stock.

Tweedy Browne Clearing Corporation (TBCC), Discount's wholly owned subsidiary, is a clearing house that Discount formed to clear its transactions so as to avoid having to pay commissions to a New York Stock Exchange member broker. In late fall 1976, defendant TBK Partners, Ltd., (TBK) contributed capital to TBCC; in return, TBK received the benefit of TBCC's clearing services and a share in Discount's profits.

In the winter of 1977, TBK contributed $500,000 to TBCC's capital account; this contribution was to be for a six month period. In the summer and fall of 1978, Reich, supposedly acting on behalf of Discount's shareholders, negotiated a deal with TBK under which TBK was to receive a fifteen percent equity interest in Discount in return for its capital contribution to TBCC. The agreement provided that if this transfer of shares was not consummated, TBK's capital contribution to TBCC was to be returned to it.

Reich, with Grayson's knowledge and consent, induced plaintiff to enter into a voting trust agreement (the VTA) with Reich and Grayson, to enter into a shareholders' agreement with all of Discount's common stock owners, and to sell part of his voting stock in Discount to TBK.

This inducement, according to plaintiff's allegations, was fraudulent, the real purpose of the VTA having been to enable Reich and Grayson to deprive plaintiff of effective participation in Discount's management, and to eventually oust him from his position as Chief Executive Officer of Discount.

Grayson and TBK allegedly knew of Reich's misrepresentations to plaintiff regarding the purpose of the VTA, and authorized or ratified those misrepresentations. Grayson had an undisclosed agreement with Reich to vote together, thus giving them control of the voting trust stock, and the majority of Discount's outstanding shares.

Plaintiff asserts that Reich's actions were a breach of the fiduciary duty he owed to plaintiff because of Reich's position as Discount's legal advisor.

The VTA, plaintiff alleges, was used to oust plaintiff from his job, deprive him of his salary, benefits, and opportunity to share in Discount's profits, and put him in a position where he is under great pressure to sell his stock for less than its fair value. Reich and Grayson intended these results when entering into the VTA.

The VTA and shareholders agreements were executed in December 1978. In January, 1979 plaintiff surrendered his shares to the voting trust in exchange for the voting trust certificate.

In June 1980, Reich and Grayson, as trustees under the VTA, terminated plaintiff as Discount's Chief Executive Officer; TBK consented to plaintiff's termination. In July 1980, plaintiff was removed by the defendants from Discount's Board of Directors.

---

1. Normally the defendants' version of the facts is to be accepted at this stage of the proceedings, *see Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 70 F.2d 297 (2d Cir. 1934), *aff'd*, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935); *PAS–EBS v. Group Health, Inc.*, 442 F.Supp. 937, 941 (S.D.N.Y.1977).

Defendants, for the purpose of this motion, accept the complaint at face value, Defendants' Reply Memorandum at 2. For that reason, I am using the allegations of the complaint as the factual predicate for my opinion.

In any event, I find that the entire dispute is arbitrable under both plaintiff's and defendants' characterization of it.

Reich and Grayson and TBK have denied plaintiff access to Discount's books, financial records, and other records to conceal from him the actual value of his stock and to prevent him from protecting his investment by monitoring Discount's operations.

Discount has issued to Menchel, Discount's present Chief Executive Officer, 1,052 shares of Discount's stock (five percent of its stock), for less than its fair value, thus diluting the value of plaintiff's stock. This issuance was caused by Reich and Grayson acting under the VTA, and was aided and abetted by TBK. Defendants have threatened additional issuances of stock or securities convertible into stock, for less than fair value, designed to compel the plaintiff to sell his stock.

Plaintiff's job at Discount was his sole source of income,[2] his stock was his sole asset, and that stock is now virtually unmarketable.

Plaintiff sues under the Securities Act of 1933, the Securities Exchange Act of 1934, New York's General Business Law, and New York common law. He seeks rescission of the VTA, restitution of his common stock, reinstatement, a declaration that certain actions taken in the name of Discount under the VTA are null and void, compensatory quantum meruit payment for services rendered to Discount, and other compensatory and punitive damages.

### Applicable Arbitration Agreements

■ There are several applicable arbitration agreements. As part of plaintiff's application to become an allied member of the N.Y.S.E. plaintiff agreed to the following provisions:

I agree that any controversy between me and any member or member organization . . ., arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the New York Stock Exchange.

2. It appears that plaintiff now has another job.

I have read the Constitution and Rules . . ., of the New York Stock Exchange, Inc. and, if approved, I hereby pledge myself to abide by the Constitution and Rules of the Board of Directors of the New York Stock Exchange, Inc., as the same have been or shall be from time to time amended, and by all rules and regulations adopted pursuant to the Constitution, and by all practices of the Exchange.

Article VIII of the N.Y.S.E.'s Constitution provides:

Sec. 5. Any controversy between parties who are members, allied members, member firms or member corporations shall be submitted for arbitration. . . .

Sec. 6. Any controversy between a nonmember and a member, allied member, member firm or member corporation, arising out of the business of such member, allied member, member firm or member corporation . . ., shall be submitted for arbitration . . . .

The N.Y.S.E. Constitution and Rules are applicable arbitration agreements under the United States Arbitration Act. *See Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972).

### Controversy with Discount

■ The parties disagree as to whether or not plaintiff's suit is with Discount or with the other defendants. It is clear that, at least in part, Discount is an important defendant. Plaintiff seeks restitution of stock which may be in Discount's possession, reinstatement, declaration that certain of Discount's actions are void, and quantum meruit recovery for services rendered to Discount.

Insofar as plaintiff's dispute is with Discount, it falls within the provisions of section 5 of the N.Y.S.E. Constitution, quoted above, as a controversy between an allied member and a member corporation.

■ Even assuming that plaintiff is no longer an allied member of the N.Y.S.E.,

this does not bar arbitration. The "are members" requirement has been viewed as referring to the time when the controversy arose, or the business relationship underlying the controversy began, rather than the time of the bringing of the action. *See Muh v. Newburger, Loeb & Co., Inc.*, 540 F.2d 970, 973 (9th Cir. 1976); *Isaacson v. Hayden, Stone Inc.*, 319 F.Supp. 929, 930 (S.D.N.Y.1970).

Plaintiff's claims against Discount clearly fit within the "any controversy" requirement, which has been construed very broadly. *See Bear v. Hayden, Stone, Inc.*, 526 F.2d 734, 736 (9th Cir. 1975); *Legg, Mason & Co. v. Mackall & Coe, Inc.*, 351 F.Supp. 1367, 1371–72 (D.D.C.1972); *Osborne & Thurlow v. Hirsch & Co.*, 10 Misc.2d 225, 227, 172 N.Y.S.2d 522, 523 (Sup.Ct.1958). The cases cited by plaintiff as creating an exception for securities fraud claims, *Allegaert v. Perot*, 548 F.2d 432 (2d Cir. 1977), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977); *Greater Continental Corp. v. Schechter*, 422 F.2d 1100 (2d Cir. 1970); *Diana v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* [1977–1978 Transfer Binder] Fed.Sec.L.Rep. ¶ 96,194 (S.D.N.Y. 1977), *aff'd*, 607 F.2d 995 (2d Cir. 1979) do not support denying arbitration under the present circumstances. Plaintiff's participation as a member of the VTA was not primarily as an investor, but as part of the owner group of a member corporation providing for its management through the voting trust. The N.Y.S.E.'s self-regulatory interest in having internal disputes among its members arbitrated is predominant.[3]

**3.** Since section 5 requires arbitration, I need not reach the issue of whether or not this dispute is a 'controversy arising out of employment' within the meaning of the allied membership application.

**4.** The decision in *Dunay v. Weisglass*, 78 A.D.2d 444, 435 N.Y.S.2d 265 (1981), *rev'd*, 54 N.Y.2d 25, 444 N.Y.S.2d 573, 429 N.E.2d 92 (1981), cited by the plaintiff, does not warrant a different result. The *Dunay* court held that a dispute over stock ownership between joint venturers did not arise out of the business of plaintiff as an allied member of the N.Y.S.E. The stock at issue was purchased by plaintiff in

### Dispute With The Other Defendants

The other defendants, Reich, Grayson, and TBK Partners, Ltd., are not members of the N.Y.S.E. Thus, plaintiffs' dispute with these defendants is arbitrable only if it comes within section 6 of the Exchange's Constitution and "aris[es] out of the business of such member, allied member or member firm or member corporation."

I find that the plaintiff's dispute with the nonmember defendants does arise out of plaintiff's business as an allied member of the N.Y.S.E. The VTA, which is at the center of plaintiff's fraud claims, was formed, not as an investment vehicle, but rather to control the management of the member corporation. This is different from an ordinary dispute over stock ownership or fraud in a transaction for stock held simply as an investment. It relates to the functioning of Discount as a brokerage house. It governed the exercise of control and, of course, the staffing and compensation of management positions. These issues are at the core of plaintiff's cause of action. In his affidavit in opposition to defendants' motion for a stay, plaintiff states that "My business was managing Discount . . . ." I find that the controversy arises out of plaintiff's business concerning the management of the member corporation and is arbitrable under section 6.[4]

### Conclusion

Defendant's motion for a stay of this action pending arbitration, and an order directing arbitration, is hereby granted.

Submit judgment on notice.

SO ORDERED.

his role as a joint venturer; the purchase appears primarily to have been for investment purposes. The court said that the stock "purchase was not a product of [plaintiff's] business affiliation with the Exchange." *Id.* at 447, 435 N.Y.S.2d at 267.

[Since the earlier version of this opinion was filed, the New York Court of Appeals has reversed the Appellate Division's decision in *Dunay*. The Court of Appeals opinion espouses this interpretation of section 6. *Dunay v. Weisglass*, 54 N.Y.2d 25, 444 N.Y.S.2d 573, 429 N.E.2d 92 (1981).]