McLaughlin, Piven, Vogel, Inc., Respondent, v W. J. Nolan & Company, Inc., et al., Appellants.

Second Department, February 3, 1986

**APPEARANCES OF COUNSEL**

· *Windels, Marx, Davies & Ives (Raymond T. Munsell* and *Clayton A. Prugh* of counsel), for appellants.

*Suozzi, English & Klein, P. C.,* and *Rubin & Associates (Gregory S. Rubin, Robert N. Zausmer* and *James H. Decker* of counsel), for respondent. (One brief filed.)

**OPINION OF THE COURT**

WEINSTEIN, J.

The plaintiff McLaughlin, Piven, Vogel, Inc., is a New York corporation engaged as a broker-dealer of general securities and is a member of both the New York Stock Exchange (NYSE) and the National Association of Security Dealers (NASD). The plaintiff, whose principal offices are in the Counties of New York and Nassau, specializes in the sale of government and municipal bonds.

The defendant W. J. Nolan & Company, Inc. (Nolan, Inc.) was incorporated in New York in December 1984, with a principal place of business in New York County. It transacts business in, among other places, Nassau County. The individual defendants are all presently shareholders, officers and employees of Nolan, Inc. Prior to October 9, 1985, they were each employed by the plaintiff. The individual defendants Nolan, Monahan, Shalley and Keenan were employed in the plaintiff's Jericho, New York, office, at which Nolan was the manager. Defendant Chironis was employed at the plaintiff's Manhattan office. With the exception of Keenan, each individual defendant had been registered with the NYSE as a representative of the plaintiff.

On October 9, 1985, J. C. McLaughlin, the plaintiff's chairman and chief executive officer, questioned William J. Nolan as to whether the individual defendants planned to work for Nolan in a new brokerage business. Nolan conceded that he intended to start his own business. While the facts are unclear whether, following this conversation, the individual defendants decided to voluntarily leave the plaintiff's employ, or were told by McLaughlin to immediately leave the premises, there is no dispute that the defendants did not work for the plaintiff after that date.

The plaintiff thereafter commenced the instant action against the defendants, claiming that each individual defendant had access, during his or her employment, to the plaintiff's client lists and confidential records. According to the complaint, prior to termination of their employment, each or all the defendants "stole, photocopied, reproduced or converted, without the plaintiff's knowledge and consent, various records * * * of the plaintiff concerning its customers and related consumer information". The records allegedly contained information concerning client names, addresses, telephone numbers, investment activity, employment data, annual income, net worth and assets. These records were purportedly compiled and developed solely by the plaintiff, at great expense, for its exclusive use, and they were characterized as trade secrets, not readily available to anyone outside of the plaintiff's business operation nor to anyone not employed by, or an officer of, the plaintiff. The plaintiff contended that the individual defendants had access to the records solely by reason of their former status as employees and that they also had knowledge, actual or constructive, of the plaintiff's intent to keep the records confidential. The complaint alleged that

since leaving the plaintiff's employ, the individual defendants converted the records to their own use and to that of Nolan, Inc., and had also used the same to identify or accept business orders from established customers of the plaintiff. The complaint further stated that defendants Monahan and Shalley had, as a condition of their employment, signed employment agreements in which they recognized the value of the plaintiff's customer lists and agreed to deliver to the plaintiff any such lists in their possession upon termination of employment or at any time the plaintiff requested.

The plaintiff sought a judgment permanently enjoining the individual defendants from: (1) disclosing any customer information on the lists, (2) soliciting or accepting orders or other business from any client of the plaintiff whose name or identity the individual defendants obtained while in plaintiff's employ or from leads obtained while so employed, (3) soliciting or inducing any of the plaintiff's other employees to terminate their employment, and (4) in any way aiding Nolan, Inc., and any of its employees or officers from engaging in any of the foregoing conduct. The plaintiff also sought similar restrictions as to Nolan, Inc., and an order directing all the defendants to deliver to it all originals and copies of any of the plaintiff's records which the defendants had in their control and which had allegedly been taken from the plaintiff's offices or reproduced there.

The plaintiff concomitantly moved for a preliminary injunction, restraining the defendants from committing the same acts which were the subject of its demand for a permanent injunction. The defendants thereafter cross-moved for an order compelling arbitration.

■ Special Term granted the plaintiff's motion for a preliminary injunction, denied the cross motion to compel arbitration, and directed that trial of the action be expedited. With respect to the issue of arbitration, the court found that arbitration could only be compelled where there is an express agreement, and held that neither the constitution nor rules of the NYSE constituted such an agreement. We disagree.

Initially, we note, as did Special Term, that: "Arbitration will be compelled only where there is a clear, unequivocal written agreement to arbitrate * * * [A]bsent evidence of an express intention to resort to arbitration, no obligation to do so will be deemed to exist" *(Just In-Material Designs v I.T.A.D. Assoc.,* 94 AD2d 103, 105-106, *affd* 61 NY2d 882).

However, a written agreement to arbitrate does in fact exist at bar, although that agreement is not between the plaintiff and the defendants, but rather, between the parties and the NYSE.

The NYSE Constitution, article VIII, § 1 provides: "Sec. 1 Any controversy between parties who are members, allied members, member firms or member corporations and any controversy between a non-member and a member or allied member or member firm or member corporation arising out of the business of such member, allied member, member firm or member corporation, or the dissolution of a member firm or member corporation, shall at the instance of any such party, be submitted for arbitration, in accordance with the provisions of the Constitution and the Rules of the Board of Directors".

The plaintiff is admittedly a member of the NYSE and thereby subject to its rules. The NYSE Constitution, article IX, § 8 provides that "[n]o person admitted to membership shall be entitled to any privileges thereof until he shall have signed the Constitution of the Exchange, thereby pledging himself to abide by the Constitution. By such signature, he pledges himself to abide by the same as the same has been or shall be from time to time amended, and by all the rules adopted pursuant to the Constitution". Similarly, the defendants Nolan, Monahan, Shalley and Chironis, as registered representatives of the plaintiff, had to and did agree, in their applications to the NYSE, to also be bound by its constitution and rules. NYSE rule 345.16 provides that "[e]ach prospective registered representative or officer, in consideration of the Exchange's consideration of the applicant's application, shall sign an agreement, on a form prescribed by the Exchange, which includes a pledge that the registered representative or officer will abide by the Constitution and Rules adopted pursuant thereto as these now exist and as from time to time amended".

The foregoing has been held to constitute a written agreement to arbitrate between a registered representative and a member of the NYSE (see, Crawford v Merrill Lynch, Pierce, Fenner & Smith, 35 NY2d 291, 300). The Court of Appeals has clearly stated that the NYSE Constitution, article VIII, § 1 "constitutes a written agreement to submit to arbitration before the" NYSE (Matter of Dunay v Weisglass, 54 NY2d 25, 30-31). As was well stated by the United States District Court for the Northern District of Georgia, "[t]he Constitution and Rules of the New York Stock Exchange constitute the agree-

ment between the Exchange and plaintiff as well as the agreement between the Exchange and defendant; and, by their terms, they also constitute an agreement between plaintiff and defendant. It is not dispositive that there was no express agreement to arbitrate * * * by plaintiff and [defendant] as each was no doubt aware of the binding effect of the Exchange's Constitution and Rules providing for arbitration on representatives and member firms" *(Cullen v Paine, Webber, Jackson & Curtis,* 587 F Supp 1520, 1523; *see also, Coenen v Pressprich & Co.,* 453 F2d 1209, 1211, *cert denied* 406 US 949; *O'Neel v National Assn. of Sec. Dealers,* 667 F2d 804, 806; *Morgan, Olmstead, Kennedy & Gardner v United States Trust Co.,* 608 F Supp 1561, 1563). Therefore, the absence of an express written agreement between the parties is not a bar to referring this matter to arbitration.

However, whether the subject controversies must be arbitrated is another matter. In resolving this question, our attention is directed to NYSE rules 347 and 600.

Rule 347 provides: "Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules". This rule is applicable, if at all, only to those individual defendants who were employed by plaintiff as registered representatives. We note that it is of no moment that Nolan, Monahan, Shalley and Chironis are no longer registered representatives *(see, Muh v Newburger, Loeb & Co.,* 540 F2d 970, 973; *Bear v Hayden, Stone,* 526 F2d 734, 735). The arbitration provisions of the NYSE which relate to controversies arising from the employment of a registered representative have been held to survive termination of such employment, whether voluntary or otherwise *(see, Coudert v Paine Webber Jackson & Curtis,* 705 F2d 78, 81).

Thus, we must determine whether the plaintiff's claims against Nolan, Monahan, Shalley and Chironis are within the ambit of NYSE rule 347, to wit, whether the controversy arose out of the employment or termination of employment of these defendants. While the language of the NYSE Constitution, article XIII, §§ 1 and 5 referring to "[a]ny controversy between parties who are members, allied members, member firms, or member corporations" has been construed broadly *(see, Matter*

*of Dunay v Weisglass,* 54 NY2d 25, 30-31, *supra; Kelleher v Reich,* 532 F Supp 845, 849), a distinction has been recognized between such language and the language of rule 347, requiring that the controversy arise out of a registered representative's employment or termination of employment *(see, Kelleher v Reich, supra,* at p 849, n 3), and the language of the NYSE's arbitration provisions concerning disputes between members and nonmembers, which apply only to controversies arising out of the business of the member *(see, Paine Webber, Jackson & Curtis v Chase Manhattan Bank,* 728 F2d 577, 580). However, even in applying the more restricted standard, we agree with the defendants that the test was met, such that the controversy against Nolan, Monahan, Shalley and Chironis arose out of their employment or the termination thereof.

Among the claims against these defendants are that they were engaged for at least 10 months in a conspiracy to harm the plaintiff and that the injunctive relief requested is appropriate to restrain them from doing business with the clients they serviced and developed while in the plaintiff's employ. Such claims are arbitrable *(see, Merrill Lynch, Pierce, Fenner & Smith v Hovey,* 726 F2d 1286; *Merrill Lynch, Pierce, Fenner & Smith v Thomson,* 574 F Supp 1472; *Merrill Lynch, Pierce, Fenner & Smith v Shubert,* 577 F Supp 406; *Merrill Lynch, Pierce, Fenner & Smith v DeCaro,* 577 F Supp 616).

With respect to Keenan and Nolan, Inc., neither of which is an NYSE member, the defendants argue that NYSE rule 600 is applicable. Rule 600 provides: "(a) Any dispute, claim or controversy between a customer or non-member and a member, allied member, member organization and/or associated person arising in connection with the business of such member, allied member, member organization and/or associated person in connection with his activities as an associated person shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc. as provided by any duly executed and enforceable written agreement or upon the demand of the customer or non-member".

The plaintiff claimed that Keenan stole trade secrets containing information regarding its customers, recruited other of its employees to participate in a conspiracy against the plaintiff, violated a fiduciary duty owed to the plaintiff arising from her employment relationship, conspired with the other individual defendants to engage in acts detrimental to the plaintiff, and committed acts constituting unfair competition. With respect to Nolan, Inc., the plaintiff asserted that this defen-

dant was the vehicle used by the individual defendants to set up their competing business while still in the plaintiff's employ. According to the plaintiff, in the course of establishing Nolan, Inc.'s business and while still employed by the plaintiff, the defendants utilized confidential records and information, began soliciting accounts, and converted customer lists.

Thus, contrary to the plaintiff's assertions that such claims only arose out of the conduct of Nolan, Inc., and the five individual defendants, we find that the controversy does in fact arise from the plaintiff's business *(see, Merrill Lynch, Pierce, Fenner & Smith v Hovey,* 726 F2d 1286, 1289, *supra; see also, Legg, Mason & Co. v Mackall & Co.,* 351 F Supp 1367, 1369, 1371-1372; *but see, Matter of Verrier [Merrill Lynch, Pierce, Fenner & Smith],* Sup Ct, NY County, Sept. 26, 1983, Meyers, J.).* Thus, we hold that arbitration is required with respect to the plaintiff's claims against each defendant.

However, although we grant the defendants' cross motion to compel arbitration, we need not relinquish jurisdiction over the action. That arbitration is required does not mandate the conclusion that the plaintiff may not obtain injunctive relief pending arbitration *(see, Larson Wulff & Co. v Margulies,* 94 Misc 2d 847; *Shay v 746 Broadway Corp,* 96 Misc 2d 346).* The power of the courts to "enforce" an arbitration agreement "includes the power to see that the arbitration is not rendered a nullity by reason of arbital and judicial impotence" *(see, Brooks Sec. v Vanderbilt Sec.,* 126 Misc 2d 875, 877).*

The purpose of a preliminary injunction is to preserve the status quo pending trial *(see, Schlosser v United Presbyt. Home,* 56 AD2d 615).* As previously discussed, that the parties are awaiting arbitration, and not a trial, is not relevant. However, the remedy of granting a preliminary injunction is a drastic one which should be used sparingly *(see, Town of Porter v Chem-Trol Pollution Servs.,* 60 AD2d 987).*

On a motion for a preliminary injunction, the applicant must prove three things, namely: (1) the likelihood of ultimate success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) that the equities are balanced in his favor *(see, Albini v Solork Assoc.,* 37 AD2d 835).* The movant has the burden of establishing a right to this equitable remedy *(see, Park Terrace Caterers v McDonough,* 9 AD2d 113, 114, *lv denied* 9 AD2d 891).*

As to the likelihood of success on the merits, a prima

facie showing of a right to relief is sufficient; actual proof of the case should be left to further court proceedings, or, in this case, arbitration *(see, Gambar Enters. v Kelly Servs.,* 69 AD2d 297, 306). The plaintiff has made such a showing.

According to the plaintiff, the individual defendants had converted its confidential customer lists and were using same to solicit its customers. The records to which the defendants allegedly had access, many of which the defendants allegedly converted, contained client names, addresses, telephone numbers, investment activity, annual income, liquid assets, net worth and employment data.

The plaintiff's chairman, J. C. McLaughlin, maintained that as of October 24, 1985, more than 200 of the plaintiff's clients had been solicited by telephone on behalf of Nolan, Inc., by Shalley, Monahan and/or Chironis. He attributed the ability of the defendants to target so many of the plaintiff's clients within such a short time period following the termination of the individual defendants' employment to the conversion and use of the plaintiff's customer lists, which were described as the "lifeblood" of the company. McLaughlin further characterized the plaintiff's method of attracting customers as unique, in that rather than making "cold" telephone calls or sending randomly generated mail, the plaintiff spends over $1,000,000 annually on nationwide radio and newspaper advertising and deals solely with people who respond and have an interest in the company's product.

While the defendants disputed the plaintiff's claim that it in fact had a unique method of obtaining customers, and two defendants, Monahan and Shalley, also denied having signed employment agreements with the plaintiff, they did not deny having made copies of customer records in their possession prior to the termination of their employment with the plaintiff. The defendants characterized these records as relating to their "own clients".

Under the circumstances, the description of the subject customer lists by the plaintiff as trade secrets is not inaccurate. Such customer lists, the result of effort and expense on the plaintiff's part, and containing information which the defendants would not have obtained absent their former employment with the plaintiff, are deserving of protection *(see, Town & Country House & Home Serv. v Newbery,* 3 NY2d 554, 558; *Leo Silfen, Inc. v Cream,* 29 NY2d 387, 392-393; *Defler Corp. v Kleeman,* 19 AD2d 396, 401, *affd* 19 NY2d 694; *Hecht*

*Foods v Sherman,* 43 AD2d 850; *Giffords Oil Co. v Wild,* 106 AD2d 610; *Witkop & Holmes Co. v Boyce,* 61 Misc 126, 131, *affd* 131 App Div 922; *Arnold's Ice Cream Co. v Carlson,* 330 F Supp 1185, 1187).

The second element of proof required for a preliminary injunction is proof that irreparable injury will occur if the relief is denied. Irreparable injury, for purposes of equity, has been held to mean any injury for which money damages are insufficient *(see, Jackson Dairy v Hood & Sons,* 596 F2d 70, 72).

Here, the plaintiff alleges that the defendants threaten a breach of the confidentiality of information given to the plaintiff by its customers and have encouraged the plaintiff's other employees to join them in their venture. The plaintiff also fears that other employees might well be tempted to act in a manner similar to that of the defendants. We find that these claims are of the type which constitute irreparable harm.

Finally, a court must balance the equities. "[I]t must be shown that the irreparable injury to be sustained * * * is more burdensome [to the plaintiff] than the harm caused to defendant through imposition of the injunction" *(Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.,* 70 AD2d 1021, 1022, *appeal dismissed* 48 NY2d 654). The defendants characterize the plaintiff as a large firm, employing hundreds of people, while Nolan, Inc., is described as a "small and new company seeking to start up operations". The defendants assert that the accounts at issue are effectively their livelihood *(see, Merrill Lynch, Pierce, Fenner & Smith v de Liniere,* 572 F Supp 246, 249).

We find, however, that the equities do not favor the defendants. They set up a competing business while still in the plaintiff's employ *(see, Arnold's Ice Cream Co. v Carlson, supra,* at p 1188), apparently copied or converted the plaintiff's confidential customer lists, and attempted to solicit both the plaintiff's customers and its employees. The individual defendants were apparently not forced to leave the plaintiff's employ until such time as their creation of Nolan, Inc., was discovered. They will be able to earn a living if the preliminary injunction is continued; the restraint is only that they may not solicit the plaintiff's customers in order to do so.

However, to truly balance the equities, the preliminary injunction should not apply to: (1) blood relatives of the

defendants, (2) former customers brought to the plaintiff solely through the defendants' own efforts, (3) institutional investors, and (4) persons or entities who, without solicitation, approach defendants and request that they provide brokerage services. Further, the plaintiff must post an undertaking *(see,* CPLR 6312 [b]), which we fix at $100,000.

MANGANO, J. P., THOMPSON and BROWN, JJ., concur.

Order of the Supreme Court, Nassau County, dated November 27, 1985, modified, on the law, by (1) deleting the provision thereof denying defendants' cross motion to compel arbitration and substituting therefor a provision granting defendants' cross motion to compel arbitration, (2) adding a provision that the preliminary injunction shall be in effect pending arbitration and shall not apply to (a) blood relatives of the defendants, (b) former customers brought to the plaintiff solely through the defendants' own efforts, (c) institutional investors, and (d) any persons or entities who, without solicitation, approach the defendants and request that they provide brokerage services, and (3) adding a provision that the preliminary injunction is contingent upon the plaintiff filing in the office of the Clerk of the Supreme Court, Nassau County, an undertaking, with a corporate surety, pursuant to CPLR 6312 (b), in the sum of $100,000, and serving a copy of the same upon the defendants. As so modified, order affirmed insofar as appealed from, without costs or disbursements. The arbitration shall proceed forthwith.