*355 OPINION OF THE COURT
David B. Saxe, J.
A profitable new industry — "interactive entertainment programming” — has grown rapidly in recent years. This industry, advertised on matchbook covers, bus and subway posters and late-night television, offers various preprogrammed recorded telephone messages under a "540” or "970” prefix telephone number. The programming selection these companies offer range in content from sports information and daily horoscopes to dating services and adult entertainment. Telephone numbers beginning with the "970” prefix denote services that are sexually suggestive or "adult” in nature; this separate prefix for "adult” messages was set up to facilitate the use of a blocking device parents and other subscribers may obtain to prevent children and others from hearing such "adult” material.
Plaintiff Condom Sense, Inc. (Condom Sense) is one such company. It has been offering its "entertainment programming” through New York Telephone’s "970” network since 1988. In an effort to expand its business (and possibly to avoid the connotation of "adult” and the use of blocking devises on its lines), Condom Sense applied for, and was issued, two "540” prefix telephone numbers by New York Telephone in May 1990, on which it would purportedly program humorous and educational recorded messages regarding condoms. Pursuant to the parties’ agreement, Condom Sense signed a standard form contract furnished by New York Telephone. Included in the contract was a provision reserving New York Telephone’s right to reassign the "540” lines "970” prefix numbers at its discretion if it concludes that the messages offered in the "540” lines are "adult” in nature.
On April 4, 1990, Condom Sense’s two "540” telephone lines, under the separate listings of "Fantasy Palace” and "New York Romance,” were put into operation. On May 11, 1990, defendant New York Telephone terminated its service to plaintiff’s "540” lines and reassigned plaintiff’s programming to "970” lines claiming that plaintiff’s recorded messages were "adult” in nature.
Viewing New York Telephone’s termination of its service as a material breach of contract which effectively put plaintiff’s lines out of business, Condom Sense brought the underlying action against New York Telephone for breach of contract, seeking a permanent injunction and money damages. Plaintiff *356 now moves for a preliminary injunction enjoining New York Telephone from refusing to continue to provide service on plaintiff’s assigned "540” prefix number telephone lines.
In order to grant a preliminary injunction, the law requires the moving party to demonstrate: (1) the likelihood of ultimate success on the merits; (2) irreparable injury to him absent the granting of the preliminary injunction; and (3) that a balancing of the equities favor his position (Little India Stores v Singh, 101 AD2d 727 [1st Dept 1984]). I turn first to the issue of whether the plaintiff is likely to succeed on the merits.
Condom Sense maintains that New York Telephone’s determination constituted arbitrary and capricious censorship. In addition, it argues that the defendant’s definition of “adult” is ambiguous, broad and vague, thus making it impossible to anticipate how the defendant will interpret the content of its programs.
Further, plaintiff argues that its programming is not "adult”, but rather, humorous in nature. It is plaintiff’s contention that its messages were designed to educate the public on the use of condoms as a "common sense” method of preventing sexually transmitted diseases.
It is undisputed that the choice of programs offered by the plaintiff include one entitled "Racy Rachel” and another known as "Desirey”. Further, New York Telephone maintains that the content of plaintiff’s programming included "[h]eavy breathing and a great deal of moaning and groaning.” Additionally, there was evidence that plaintiff’s program included a scenario of two young women returning home from a picnic handling a frankfurter wherein one was “[g]etting very excited to the point of orgasm over their discussion of this frankfurter.” There has been no showing up to this point that the programming was at all educational or informative in nature. Based on these facts and allegations, it appears likely that the content of plaintiff’s programming was sexually explicit in nature and that, therefore, defendant was not arbitrary in categorizing it as "adult”. Under such circumstances, defendant’s action in transferring plaintiff’s programming to the "970” exchange must be viewed as consistent with the terms of the parties’ agreement, and therefore, would not constitute a breach of contract.
Condom Sense makes a further argument that, because New York Telephone failed to review plaintiff’s programming prior to enacting plaintiff’s service, New York Telephone waived its *357 right to exercise the contractual provision permitting it to reassign to plaintiff a ”970” line. However, the contract expressly precludes a waiver implied from New York Telephone’s failure to enforce any given provision of the contract. I also note that even if defendant had initially reviewed plaintiff’s programming, the programming could have been revised at any time. Obviously, if New York Telephone were not permitted to review the plaintiff’s programmed messages after the lines were placed in operation, it would be effectively precluded from any workable means of content review. I conclude that a waiver may not be implied from defendant’s failure to review plaintiff’s programming prior to granting "540” service to the plaintiff.
In the alternative, Condom Sense argues that, because it was required to accept the terms set forth by New York Telephone in order to sustain its business, the contract was a voidable contract of adhesion on the ground of economic duress. A contract is voidable when the existence of business compulsion is shown by proof that " 'immediate possession of needful goods is threatened’ ” (Austin Instrument v Loral Corp., 29 NY2d 124, 130 [1971]). Here, while plaintiff’s business needs might have required the use of telephone service, plaintiff could have availed itself of other options, including the application for a "540” exchange from the outset. Accordingly, a factual finding that the plaintiff was compelled under duress to enter into this agreement with New York Telephone is unlikely, and the contract would not constitute a voidable contract of adhesion. Therefore, because plaintiff has not shown that defendant breached the parties’ contract in reassigning plaintiff’s programming to the "970” exchange and since the parties’ contract appears to be valid, plaintiff failed to demonstrate the likelihood of ultimate success on the merits.
Furthermore, plaintiff has failed to make the requisite showing of irreparable injury absent the granting of the preliminary injunction. Condom Sense maintains that the issuance of the telephone lines by New York Telephone constituted defendant’s approval of the content of plaintiff’s recorded entertainment. In reliance upon such approval, plaintiff claims, it expended over $8,000 in print media costs for the purpose of developing its business and paid an additional $16,000 in advance to secure future advertising space. Irreparable injury, for the purposes of equity, has been held to mean any injury for which money damages are insufficient (Me *358 Laughlin v Nolan, 114 AD2d 165, 174 [2d Dept 1986]). While New York Telephone discontinued service to plaintiffs ”540” prefix lines, defendant continued transmission of plaintiffs recorded entertainment over defendant’s ”970” exchange, thereby maintaining the operational status of plaintiffs business. Additionally, plaintiff may pursue its claimed right to recover its monetary loss resulting from its advertising expenditures, for which plaintiff will be adequately compensated if its claims are ultimately sustained in this action.
Finally, a balancing of the equities does not favor plaintiffs position. Condom Sense argues that, while New York Telephone categorizes its ”970” line as "adult”, defendant is not applying its rules universally since defendant is permitting other "adult” service on its ”540” exchange. However, although the defendant does not routinely screen subscribers’ messages, it attempts to assign the ”970” prefix to all "adult” programs in order to facilitate the ordering of blocking services by parents and others who do not wish to have such programs available to their homes or business.
Given the apparent nature of plaintiffs messages and the compelling need to shield minors from the influence of sexually explicit media (without unnecessary interference with First Amendment rights) (see, Sable Communications v Federal Communications Commn., 492 US 115, 126 [1989]), public interest is better served by limiting access of plaintiffs recorded messages to the ”970” network, readily associated with "adult” programming. Thus, public policy concerns outweigh possible harm which may result to plaintiffs business and, therefore, Condom Sense has thus far failed to demonstrate that the balancing of the equities lies in its favor.
Accordingly, since plaintiff has not met its burden of proof entitling it to equitable relief, Condom Sense’s motion for a preliminary injunction against New York Telephone is denied.