■ DONNA W. BISHOP et al., Appellants, v BARRY RUBIN et al., Respondents. [643 NYS2d 108]

Plaintiffs are collectively holders of a majority interest in a partnership doing business as Great Neck Plaza Shopping Center. The Susan Brecher Trust, for whom defendants Rubin and Schwartz are co-trustees, is the purported holder of a 35% interest in the partnership. Rubin also claims to be the managing agent for the property. On October 12, 1994, the signatories to the latest partnership agreement met, on notice to defendants, for the express purpose of voting to remove Rubin as managing agent; the resolution was adopted unanimously. This action ensued to enjoin Rubin from continuing to act as managing agent.

The partnership was formed in the 1950s. Over the years, the practice developed that each time a partner died, a new partnership agreement would be executed by the remaining partners and the beneficiaries who succeeded to the interest of the deceased partner. This was formalized in the 1986 agreement which established a procedure for dealing with a decedent's interest in the partnership. Before title to an interest in the partnership could vest with a decedent's heirs, the beneficiary would be required to execute an agreement for entry into the partnership, whereby he would assume the same liabilities as all other partners. If he failed to do so, the managing agent, "in his sole discretion," could then buy back the deceased partner's interest on behalf of the partnership.

Another provision in the initial partnership agreement, requiring a two-thirds majority in order to remove the managing agent, gave control over such removal to Morris Brecher, initially the holder of the largest (35%) share in the partnership. The original managing agent was Alfred Wohl, owner of a 30% interest in the original partnership, who divided his interest equally among his children, Michael and John Wohl and Donna Wohl Rubin. Susan Brecher, who succeeded to her brother Morris' interest under terms of his will, initially intended that her 35% interest be administered after her demise by Alfred Wohl in a testamentary trust; but when Alfred predeceased her, Susan executed a codicil drawn by Barry Rubin (who had been employed by Alfred as an attorney), naming Rubin a co-trustee of this trust in place of Alfred. The 1986 partnership agreement designated Rubin and Michael Wohl as managing agents of the partnership property. According to plaintiffs, this is how Rubin insinuated himself into a position which, upon Susan's death, purportedly left him wearing two hats—as one of the managing agents, and as co-trustee in control of enough interest in the partnership to block his removal as managing agent, under the super-majority provision.

Because Susan Brecher was still alive when the 1986 agreement was executed, Rubin's only authority under that document was as one of the designated managing agents, whose removal would require a super-majority. In November 1987, three months after Susan died, Rubin drafted a new partnership agreement to include the Brecher Trust as a successor in interest, but when the remaining partners, on the lead of co-manager Michael Wohl, deleted from this document the super-majority requirement for removing a managing agent, Rubin and his co-trustee refused to sign it. Thus, the Brecher Trust was not a party to this or any valid, subsequent partnership agreement. Neither Rubin nor Michael Wohl ever sought to exercise the "buy-out" option with regard to the Brecher interest.

Plaintiffs argue that Rubin and his co-defendant/co-trustee lost the power to block removal of the managing agent when the Brecher Trust failed to succeed formally to a partnership interest. Rubin responds that since the Brecher interest was never "bought out" by the remaining partners, the Trust remained a major interest in the partnership by acquiescence.

Even if the Brecher Trust retained its 35% interest in the partnership, plaintiffs argue that it no longer held a veto over removal of the manager because of the deletion of the super-majority provision in the 1987 agreement. But on the eve of

the IAS Court's decision on the motions for preliminary injunctive relief and summary judgment, Rubin suddenly produced a later version of the agreement (which was only "yesterday * * * discovered in my files"), purportedly executed by all parties (including the Brecher Trust) in 1990, but evidently "forgotten about" since then, reinstating the super-majority provision.

Leaving aside for the moment their insistence that there was no sentiment for resuming the unpopular Rubin's self-held veto over his removal as managing agent, plaintiffs decry the 1990 agreement as a sham, for several reasons. A month earlier, Rubin, who had already been accused of producing a "cut-and-pasted" 1989 purported agreement, swore, in his cross-moving affidavit for summary judgment, that "there is no executed 1990 partnership agreement, the last such agreement having been executed in 1986." Further, the purported 1990 agreement did not bear the signature of Rubin's co-trustee for the Brecher Trust, as would have been required by law (see, Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 10-10.7, at 688-689). Rubin concedes that even he did not get around to signing this recently discovered 1990 agreement until January 25, 1995, which was $3 1/2$ months after the partners had formally voted unanimously to remove him as managing agent.

Under this analysis of the record, it was error for the IAS Court to have conferred *de jure* partnership status upon the Brecher Trust. The majority of the partnership had every right (Partnership Law § 40 [5], [8]) to remove its managing agent for cause, which included assertions of precipitous decline in rental income, overcharges and selective failures to charge certain tenants, overcharging the partnership for management fees and personal expenses, and conflicts of interest, *inter alia*. As a *de facto* partner at best, the Brecher Trust could lay claim to no more than its nominal 35% interest, which would have been insufficient to block a removal resolution by majority vote.

Plaintiffs have demonstrated likelihood of success on the merits, and the record contains ample evidence of irreparable injury to the partnership by Rubin's continued exercise of management control of the shopping center; the equities are clearly balanced in plaintiffs' favor, thus warranting preliminary injunctive relief (*McLaughlin, Piven, Vogel v Nolan & Co.*, 114 AD2d 165, *lv denied* 67 NY2d 606). Furthermore, our search of the record on defendants' summary judgment motion reveals no issues of fact which would warrant a trial with

regard to Rubin's ability to veto his own removal for cause as managing agent. Accordingly, summary judgment should be granted to the non-moving parties plaintiff (CPLR 3212 [b]). Concur—Sullivan, J. P., Rosenberger, Wallach, Kupferman and Williams, JJ.