■ HARRY TERRELL, Appellant, v FELICIA TERRELL, Respondent. [719 NYS2d 41] —Order, Supreme Court, Bronx County (Gerald Esposito, J.), entered July 17, 2000, which, to the extent appealed, as limited by the briefs, denied plaintiff's motion for a preliminary injunction staying defendant from taking any action to enforce or execute upon the judgment or warrant of eviction arising out of certain Housing Court proceedings, unanimously reversed, on the law, the facts, and in the exercise of discretion, without costs, and the preliminary injunction granted.

The parties, uncle and niece, dispute ownership of a house located at 3531 Grace Avenue, Bronx, New York. Zula Mae Terrell owned the house until her death on July 17, 1997. On September 9, 1995 Zula Mae executed a will in which she devised the property to her son, plaintiff Harry Terrell. She also named him executor of her will. On April 15, 1997, Zula Mae executed a quitclaim deed conveying the same property to her granddaughter, defendant Felicia Terrell, plaintiff's niece. Both Harry and Felicia lived in the house with Zula Mae for various periods of time preceding her death.

In February 1999, Felicia commenced a licensee holdover proceeding against Harry in Housing Court which was settled. In the stipulation of settlement, Harry agreed to the entry of a warrant of eviction against him, which was stayed until September 9, 1999. The stipulation was without prejudice to Harry's claims of ownership, and permitted him to remain in the house during the stay without paying use and occupancy. It also provided that Harry would bring an action in Supreme Court within three months of the settlement to challenge the validity of the quitclaim deed.

The complaint in this action alleges that Zula Mae did not have the mental capacity to execute the quitclaim deed when she signed it. Harry also moved for a preliminary injunction staying Felicia from evicting him during the pendency of the action. In support of his motion, plaintiff cited Bridgeport Hospital records, where Zula Mae was treated from March 10, 1997 to April 3, 1997. These records contained numerous references to Zula Mae's periodic confusion as to person, place and time, and to her lack of understanding as to why she was in the hospital. The medical history portion of Zula Mae's hospital records also contains references to dementia, impaired memory, the onset of slurred speech and "mental status changes." Notes from the hospital discharge planning conferences also reveal that Zula Mae's family members, including Felicia, were explicitly made aware of her declining mental status. Harry, however, did not participate in these conferences.

In opposition to the motion for a preliminary injunction, Felicia submitted an affidavit in which she asserted that Zula Mae was fully competent when she deeded the house to her, and that Zula Mae did so because Harry was mistreating her[1]

---

1. In opposition to plaintiff's motion, Sheila Wimbush Bowles, Zula Mae's niece, submitted an affidavit stating that on March 10, 1997, she found the decedent in her house, semi-conscious and soaked in vomit and that she had

and stealing her money.[2] The quitclaim deed to Felicia was signed before two witnesses and a notary public. Defendant also asserted that she has taken care of the house and paid taxes on it since April 1997, while Harry, who is disabled,[3] has allowed it to deteriorate and may not be able to afford to keep it. The IAS Court denied plaintiff's motion, finding that Harry did not adequately demonstrate a likelihood of success on the merits of his claim that Zula Mae lacked the mental capacity to deed the house to her granddaughter. This was an improvident exercise of discretion.

To obtain a preliminary injunction, Harry was required to establish (1) a likelihood of success on the merits of his claim that his mother lacked the mental capacity to execute the quitclaim deed; (2) irreparable injury in the absence of the injunction; and (3) a balancing of the equities in his favor (*see, Aetna Ins. Co. v Capasso*, 75 NY2d 860). While we agree with the IAS Court that the second and third elements were met here, we also conclude that plaintiff has made a sufficient showing on the first element, a likelihood of success on the merits of his claim that his mother lacked the mental capacity to execute the quitclaim deed to Felicia (*see, Demartini v Chatham Green*, 169 AD2d 689 [evidence demonstrating a likelihood of success on the merits need not be conclusive]; *Sau Thi Ma v Lien*, 198 AD2d 186, 187, *lv dismissed* 83 NY2d 847; *McLaughlin, Piven, Vogel v Nolan & Co.*, 114 AD2d 165, 172-173, *lv denied* 67 NY2d 606 ["(a)s to the likelihood of success on the merits, a prima facie showing of a right to relief is sufficient; actual proof of the case should be left to further court proceedings"]). In support of his motion, plaintiff submitted medical records describing the decedent as confused, disoriented, and suffering from dementia during her hospitalization. She executed the quitclaim deed twelve days after her release from that hospitalization. While not conclusive, plaintiff's proof was sufficient for the purpose of obtaining provisional relief.

The second element required for an injunction, irreparable injury, was also sufficiently set forth. Given plaintiff's disability and his financial constraints, eviction would place him under the extreme hardship of finding a new place to live. Fur-

---

her taken to the hospital. Sheila attested that Harry was also in the house at the time, but that he had left his mother unattended.

2.  Felicia attested that Harry had been using his mother's MAC card without her permission, and that he had run up approximately $25,000 in credit card debt under her name without her permission.

3.  Harry has multiple sclerosis. He is confined to a wheelchair and requires 24 hour care by home attendants. He receives Medicaid benefits and $587/month in Supplemental Security Income.

ther, while defendant has title to the property and wishes to sell it, plaintiff has lived in the house for at least the last 8 years and has no other place to live.

Finally, a balancing of the equities favors granting the preliminary injunction. While the record is unclear whether plaintiff has been paying use and occupancy, the issue of whether, and to what degree, plaintiff may have been unjustly enriched at his niece's expense can be raised at trial. Thus, despite the evidence of a question of fact as to the decedent's mental capacity (*US Reins. Corp. v Humphreys*, 205 AD2d 187, 192), we find that the IAS Court abused its discretion in failing to grant a preliminary injunction to maintain the *status quo* during the pendency of the action (*Board of Mgrs. of 193 Second Ave. Condominium v End Real Estate Corp.*, 253 AD2d 587, 588; *Sforza v Nesconset Fire Dist.*, 184 AD2d 631). Concur—Tom, J. P., Mazzarelli, Andrias, Ellerin and Lerner, JJ.

