OPINION OF THE COURT
Bentley Kassal, J.
ISSUE
Petitioners, as an incident of their employment with a member firm of the New York Stock Exchange (NYSE), filed application forms with the NYSE to become registered representatives. The application forms contained language consenting to arbitration of disputes with members of the NYSE or referred to the rules of the NYSE which contain provisions for arbitration. To date, the petitioners have acted only in limited capacities since their applications have not yet been accepted.
The issue is whether the mere filing of such applications with the NYSE, without any acceptance thereof, *806 constitutes an agreement to arbitrate pursuant to CPLR 7503 (subd [b]).
The parties are in agreement that there is no legal precedent on this question.
FACTS
This is a motion and cross motion to stay and compel arbitration, respectively.
The seven petitioners had formerly been employed as corporate bond salesmen and traders by respondent, Scandinavian Securities Corporation (Scandinavian), which was a member of the National Association of Securities Dealers (NASD), but not a member firm of NYSE. These employees had agreed with Scandinavian that any disputes arising out of their employment would be resolved by arbitration before the NASD. On February 29, 1980, all the petitioners resigned these positions with Scandinavian and assumed similar employment with Moseley, Hallgarten, Estabrook & Weeden, Inc. (Moseley), a member firm of the NYSE between March 3-13, 1980. As required by their new employment with Moseley, the petitioners thereupon applied to the NYSE for approval as “registered representatives”.
On March 21, 1980, Scandinavia initiated arbitration proceedings against petitioners before the NYSE, alleging a violation of the NYSE rules and the Code of Fair Practice of the Securities Industry Association, a breach of petitioners’ fiduciary employee obligations and wrongful inducement of the breach by Moseley. Thereafter, petitioners initiated arbitration proceedings before the NASD to recover unpaid salary and commissions due from Scandinavian. Scandinavian contends that the petitioners, having applied to the NYSE to be registered representatives, thereby agreed to be bound by the rules of the NYSE which require that this matter be resolved by arbitration before the NYSE. The petitioners argue that, since their NYSE application had not been accepted, those rules do not apply and NASD remains the proper forum.
THE APPLICATIONS
The applications of the petitioners to the NYSE for *807 approval as registered representatives essentially fall into three classifications:
1. Petitioner Bernstein filed a one page application, which states in relevant part: “In consideration of the New York Stock Exchange, Inc. (‘Exchange’) receiving and considering my application, I agree that *** (c) I shall be subject to the penalties, prohibitions or limitations provided for under the Rules of the Exchange *** (d) Any controversy between me and any member or member organization arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the Exchange.” (Emphasis added.)
2. The remaining five petitioners filed very lengthy applications, with many questions and statements, inter alia:
“2. To induce the agency, jurisdiction or organization with or to which I am filing or submitting this application to receive and consider it * * * C. I agree to abide by the Statute(s), Constitution(s), Rules and By-Laws *** of the agency, jurisdiction or organization with or to which I am filing or submitting this application; D. If I shall violate or be charged with the violation or possible violation of any Statute, Rule, Constitution or By-Law of [NYSE] with or to which I am filing or submitting this application, I agree to be subject to and abide by the penalties of the Statute(s), Constitution(s), Rules and ByLaws of such agency, jurisdiction or organization.
“3. Further, and in consideration of the securities or commodities self-regulatory organization receiving and considering this application, I submit myself to the jurisdiction of such organizations).” (Emphasis in original.)
3. Petitioner Moosbrugger withdrew his application before it was accepted.
As can be seen from the above-quoted provisions, petitioner Bernstein’s application does expressly mention arbitration, but that provision only applies to arbitration of a “controversy between me and any member or member organization”. Scandinavian is not a member, and, thus, *808 this provision cannot be a basis for compelling Bernstein to arbitrate before the NYSE.
The only other provisions of the application forms which might be applicable are those which provide, in general terms, that the applicants will abide by the constitution, rules and by-laws of the NYSE.
THE NYSE RULES
Scandinavian relies on the following NYSE rules to compel arbitration:
Rule 345.16, which provides: “Each prospective registered representative or. officer, in consideration of the Exchange’s consideration of the applicant’s application, shall sign an agreement, * * * that the registered representative or officer will abide by the Constitution and Rules”.
Rule 600(a), which provides: “Any dispute, claim or controversy between a customer or non-member and a member, allied member, member organization and/or associated person arising in connection with the business of such member, allied member, member organization and/or associated person in connection with his activities as an associated person shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc. as provided by any duly executed and enforceable written agreement or upon the demand of the customer, or non-member.”
AMBIGUITY
A reading of the statements in the applications and the NYSE rules reveal these two areas of ambiguity:
1. The NYSE rules provide that a nonmember may compel arbitration with an “associated person”, but this term is not defined in the NYSE rules; and
2. Although the applications of the five petitioners state that the applicants agree to arbitrate disputes “to induce the [NYSE] to receive and consider the application” the NYSE rules provide only that a registered representative shall abide by the NYSE rules and the arbitration provisions. Thus, there is still a question as to whether the *809 applicants have agreed to arbitrate disputes after the filing of applications but prior to acceptance.
1. “Associated Person”
Although “associated person” is not defined by the NYSE rules, that term is defined in section 3 (a) (21) of the Securities Exchange Act of 1934 (US Code, tit 15, § 78c, subd [a], par [21]) to include any officer or employee of a member of the national securities exchange or any person directly or indirectly controlled by such member.
Petitioners state that they neither admit nor deny that they are now associated persons (with respect to their employment by Moseley) but claim that the provision is irrelevant because (a) the term is not defined by the NYSE constitution or rules and (b) the grievance sought to be arbitrated did not arise out of their employment with Moseley (a member) but rather their acts while employed by Scandinavian (a nonmember).
As to (a), the definition of “associated persons”, as stated above in the Securities Exchange Act, appears to be a reasonable one but there is no evidence that the petitioners had notice of this definition at the time the applications were filed. As to (b), Scandinavian’s statement of claim is broad enough to encompass alleged acts of the petitioners both while employed by Scandinavian and later when employed by Moseley.
2. Effect of NYSE Rules Prior to Approval of Petitioners as Registered Representatives
The petitioners argue that they may not be compelled to arbitrate this dispute before the NYSE since the petitioner Moosbrugger withdrew his application prior to its acceptance and the applications of the other petitioners have not been accepted at this time.
Both sides agree that the only case which presents a fact pattern remotely similar to this is Coenen v Pressprich & Co. (453 F2d 1209, cert den 406 US 949). In that case the controversy between the parties arose before the respondent was accepted as a member of the NYSE. However, prior to the demand for arbitration, the application for membership was granted. Accordingly, the holding of the case — that arbitration could be compelled — is *810 clearly distinguishable and this question must still be determined as an issue of first impression.
The NYSE rules provide little guidance as to the status of a member’s employee during the pendency of his application to be a registered representative. NYSE rule 345 (a) (1) restricts the duties which a member firm may assign to an employee who is a prospective registered representative prior to his approval by the NYSE and NYSE rule 308 provides the method by which an application to become a registered representative is considered. Under NYSE rule 308, the NYSE acceptability committee reviews the character and qualifications of the applicant and makes a final determination to approve or disapprove the application, subject only to an appeal to the board of directors of the NYSE. Finally, NYSE rule 304 provides that “No person shall become an allied member or approved person unless approved by the Board of Directors.”
Thus, approval of an application is not a mere ministerial formality. The status of an applicant is obviously tentative and does not change in substance until all of the steps have been successfully completed.
Although the statements made in the application forms and some of the NYSE rules may be ambiguous as to the arbitrability of disputes between nonmembers and applicants for membership or other approval, section 6 of article 8 of the NYSE constitution only requires a “member, allied member, member firm or member corporation” to arbitrate controversies with nonmembers. Accordingly, by reading together all of the relevant provisions of the NYSE constitution, rules and application forms, the clear implication is that an applicant is not bound to arbitrate controversies before the NYSE until his application has been approved.
Finally, logic supports the conclusion that the acceptance of the application, rather than its filing, triggers the obligation to arbitrate. To hold otherwise would require arbitration by a party whose application might later be rejected.
THE LAW
The role of the court on an application to stay arbitra *811 tian is severely limited and the only issues to be determined are whether the parties entered into a valid agreement to arbitrate and, if so, whether the subject matter of the dispute falls within such arbitration provisions. (CPLR 7503, subd [b]; see, generally, Matter of Howard & Co. v Daley, 27 NY2d 285; Matter of Exercycle Corp. [Maratta], 9 NY2d 329.)
In order to compel arbitration, the court must determine that an agreement to arbitrate has been established in “express, direct, and unequivocal” terms. (Gangel v DeGroot, 41 NY2d 840, 841, and the cases cited thereat.) Finally, “an arbitration clause must be read conservatively if it is subject to an equivocal reading” (supra, p 841).
CONCLUSION
Applying the principles of law outlined above, it cannot be said that the petitioners, excluding Moosbrugger, expressly, directly or unequivocally agreed to arbitrate this dispute before the NYSE either by the terms of the applications or by agreeing to abide by the NYSE constitution and rules. Petitioner Moosbrugger withdrew his application prior to its acceptance thereby negating any possible agreement to arbitrate.
Accordingly, the motion to stay arbitration before the NYSE is granted and the cross motion to compel such arbitration is denied.
(Motion to reargue or renew, December 29, 1980)
Upon the foregoing papers this motion for an order granting reargument or, in the alternative, leave to renew is disposed of as follows:
This motion is based upon the claim that “the Court misapprehended the incontrovertible fact that petitioners *** registration applications were approved by the Exchange prior to the filing of their motion to stay arbitration *** (Notice of Motion, p 2, 1Í [a]).”
Quite to the contrary, the dates of final approval of the six petitioners’ applications, initially filed between March 3 and March 13, 1980, are the crux of these motions and they are far from an “incontrovertible fact”. They must be *812 examined in relation to the date of initiation of arbitration proceedings before the New York Stock Exchange by respondent against petitioners, which date was March 21, 1980.
The court is now advised for the first time, by an affidavit dated July 31, 1980, that the applications were finally approved on varying dates, all subsequent to the initial applications. All of the final approvals bear “effective” dates significantly earlier than the actual dates of final approval. The respondent’s position is that the petitioners are bound to arbitrate during the period of conditional approval even though the New York Stock Exchange has not given final approval to their applications. According to the uncontroverted affidavit submitted, the dates of the letters granting final approval and the retroactive effective dates are:
DATE OF RETROACTIVE
NAME LETTER OF ACCEPTANCE EFFECTIVE DATE
Reiner May 8, 1980 March 31, 1980
Stanewick April 16, 1980 April 9, 1980
Osborne May 8, 1980 March 13, 1980
Doerr May 8, 1980 March 31, 1980
Lawlor <> June 9, 1980 March 13, 1980
Bernstein May 8, 1980 March 13, 1980
These “effective” dates may be binding for all other purposes, but they do not constitute a binding agreement to arbitrate as of these earlier dates. As I stated in my original decision (supra, p 805): “In order to compel arbitration, the court must determine that an agreement to arbitrate has been established in ‘express, direct, and unequivocal’ terms. (Gangel v DeGroot, 41 NY2d 840, 841 and the cases cited thereat.) Finally, ‘an arbitration clause must be read conservatively if it is subject to an equivocal reading.’ (supra, p 841).”
Further, as also previously indicated, the approval of an application is not a mere ministerial formality and the actual acceptance of the application, rather than its filing, triggers the obligation to arbitrate. To hold otherwise would be inconsistent with the above rationale.
*813 I find nothing in these letters of acceptance which persuades me to change the original determination herein.
I am, therefore, holding that the actual date of acceptance, not the retroactive “effective” date, is the critical date for arbitration purposes. As stated in the original decision herein (p 805), an agreement to arbitrate must be strictly construed. To permit applications which have not been finally approved to operate as binding arbitration agreements, nunc pro tune, is inherently unfair and defeats the public policy underlying the requirement of preciseness and definiteness in arbitration agreements.
For these reasons, the motion to reargue and renew is denied and the original determination is adhered to in all respects.