In the Matter of the Arbitration between WOODCREST FABRICS, INC., Respondent, and TARITEX, INC., Appellant.

First Department, December 20, 1983

APPEARANCES OF COUNSEL

*Donald L. Kreindler* of counsel (*Kreindler & Relkin, P. C.,* attorneys), for appellant.

*Will Levins* of counsel (*Ballon, Stoll & Itzler,* attorneys), for respondent.

OPINION OF THE COURT

SULLIVAN, J.

On or about September 24, 1981, Taritex, Inc., an importer of textile fabric, entered into a contract with Woodcrest Fabrics, Inc., a converter of such fabric, for the sale of approximately 50,000 yards of grey blended voile to Woodcrest. That same day Taritex forwarded to Woodcrest a sales contract which contained a broad arbitration clause providing for resolution of all disputes before the General Arbitration Council of the Textile Industry (GAC), a division of the American Arbitration Association. Woodcrest retained the contract without objection but did not sign it. Thereafter, Taritex delivered and Woodcrest accepted the goods specified in the contract. Woodcrest, however, asserting that the goods were defective, failed to pay the invoices

as they fell due. After efforts to reach an amicable settlement failed Taritex served a demand for arbitration, which was received by Woodcrest on March 29, 1982.

The demand for arbitration specifically identified the written contract pursuant to which arbitration was sought, set forth the name and address of the party serving the notice, quoted in full the broad arbitration clause contained on the face of the sales contract, described the dispute and specified the relief sought, and, in accordance with the requirements of CPLR 7503 (subd [c]), contained the following notice: "PLEASE TAKE FURTHER NOTICE that pursuant to CPLR § 7503 (c), unless within twenty days after service of this Demand for Arbitration you apply to stay this arbitration, you shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time." It is undisputed that an application to stay arbitration was not made until April 22, 1982, some 24 days after Woodcrest received the demand for arbitration.

By letter dated March 30, 1982 to GAC, Woodcrest's attorneys acknowledged receipt of the demand; gave notice that they were appearing in behalf of Woodcrest; and advised GAC that the fabric was substandard and defective and that in due course Woodcrest would interpose a counterclaim for damages. On April 8, 1982, 10 days after receipt of the demand for arbitration and with 10 days remaining during which Woodcrest could have timely petitioned for a judicial stay, its attorneys reversed their position and withdrew the notice of appearance because Taritex allegedly failed to attach to the demand for arbitration a copy of the contract referred to therein, and on the further ground that it failed to file three copies of said contract with GAC, as required by GAC rules. Determining that Taritex had fully complied with its rules, GAC advised Woodcrest's attorneys on April 9 that, although they were free to withdraw their representation of Woodcrest, the arbitration proceedings would continue.

Despite this finding by GAC that its rules had been followed, and with nine days remaining in the 20-day statutory period in which to initiate a proceeding to stay

arbitration, Woodcrest neither applied to the court to stay arbitration nor requested a copy of the contract. As already noted, not until April 22, 1982, 24 days after receipt of the arbitration demand, did it move to stay arbitration, alleging that it was not a party to an arbitration agreement with Taritex. Taritex opposed the motion and sought to compel arbitration, asserting, *inter alia,* the untimeliness of the application.

Special Term granted the motion, holding, apparently, at least in part, that the 20-day time limitation is not a bar to an application to stay arbitration "if the demand [does] not meet statutory requirements." Taritex' demand for arbitration, however, plainly complied in all respects with CPLR 7503 (subd [c]). Nor did Woodcrest contend otherwise. It argued, instead, that GAC rules were not followed because Taritex failed to attach a copy of the contract to the demand for arbitration served on it. The issue of compliance with the arbitrator's procedural rules is, of course, a matter for the arbitrator.[*]

Since the demand for arbitration complied with CPLR 7503 (subd [c]), and Woodcrest failed to apply to stay arbitration within the 20-day statutory period prescribed therein, it is precluded as a matter of law from contesting arbitrability. This is the clear mandate of CPLR 7503 (subd [c]), which, in pertinent part, provides: "An application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be * * * precluded" from objecting.

The time period contained in CPLR 7503 (subd [c]) is the equivalent of a Statute of Limitations and may not be extended. (*Matter of Jonathan Logan, Inc. [Stillwater Worsted Mills]*, 31 AD2d 208, affd 24 NY2d 898; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7503.28, p 75-110.) It is to be strictly construed. (*Aetna Life & Cas. Co. v Stekardis,* 34 NY2d 182; *Matter of Allstate Ins. Co. [Ness]*, 32 AD2d 912.)

Woodcrest seeks to avoid the preclusive effect of the 20-day limitation of CPLR 7503 (subd [c]) by arguing that the

---

* Under section 40 of GAC rules, GAC makes the final determination as to whether its rules have been followed. Moreover, in specifically prescribing the issues a court may consider (see CPLR 7502, subd [b]; 7503; 7511, subds [c], [e]) the Legislature did not authorize it to interpret an arbitrator's own rules.

statute does not apply in the instance where, as here, the claim is made that an arbitration agreement between the parties does not exist. But, of necessity, that is precisely the claim whenever the validity of an arbitration agreement is challenged. Here, it is incontrovertible that Woodcrest is a party to a contract which, whether by agreement or not, contains a provision for arbitration. The only issue is the validity or enforceability of that provision. Woodcrest's interpretation, if accepted, would nullify the purpose and meaning of CPLR 7503 (subd [c]), which is specifically addressed to the party who claims not to be bound by an agreement to arbitrate. It requires such a party to make application to the court within 20 days after service of the demand for arbitration, or else be precluded from thereafter challenging the validity of the agreement upon which arbitration is sought.

A case in point is *Gold Mills v Pleasure Sports* (85 AD2d 527). Neither the buyer nor seller signed the contract containing the arbitration provision. Special Term stayed arbitration on the ground that there was no contract to arbitrate, despite the fact that the application to stay arbitration, like Woodcrest's, was made beyond the 20-day period. In reversing and holding that any objection to arbitration was barred by the failure to apply for a stay within the 20-day prescribed period, this court noted (*supra,* p 528): "By reason of the failure to serve timely the application to stay arbitration, the court was without jurisdiction to entertain the application to stay arbitration or to direct a trial. This is not a case involving a stranger to a contract who would not be expected to anticipate involvement in arbitration simply because he allowed 20 days to lapse after the receipt of a notice to arbitrate".

*Gold Mills* (*supra*) thus illustrates the distinction between the instant case and *Matter of Matarasso* (*Continental Cas. Co.*) (56 NY2d 264), upon which Woodcrest relies. In *Matarasso* an insurer moved to stay an arbitration proceeding brought to recover uninsured motorist benefits under a commercial umbrella liability policy which it had issued. The umbrella policy did not contain any provision for the arbitration of disputes. Nor did the incorporation of the underlying automobile liability policy extend to the

provisions for uninsured motorist coverage (and the arbitration of claims arising thereunder), as the umbrella policy covered only the insureds' liability to third parties. In such circumstances the court held that the 20-day period was not a bar to a stay application which was based upon the contention that an agreement to arbitrate did not exist. The court distinguished *Matter of Lane (Abel-Bey)* (50 NY2d 864), where a corporation was named as a party in a stockholders' agreement containing an arbitration clause. Although it was not a signatory to the agreement it was barred from raising the issue of arbitrability because of its failure to move timely for a stay (56 NY2d, at pp 267-268, n).

As in *Lane (supra)*, the terms of the parties' agreement here are embodied in a written contract which contains an arbitration clause and the receipt of which Woodcrest cannot dispute. The only issue is whether the arbitration clause is binding on Woodcrest, which, citing *Matter of Marlene Inds. Corp. (Carnac Textiles)* (45 NY2d 327) and *Schubtex, Inc. v Allen Snyder, Inc.* (49 NY2d 1), contends that the inclusion of such a clause in the unsigned written contract constitutes a material alteration of an agreement already reached.

Clearly, the courts may not construe CPLR 7503 (subd [c]) to require a party to an agreement which makes no mention of arbitration to move timely to stay arbitration. Conversely, CPLR 7503 (subd [c]) should not be construed in a manner that totally vitiates the 20-day proscription, a result which would be inevitable if any party to an agreement containing an arbitration clause could ignore the requirements of the statute merely by alleging that there is no arbitration clause in existence. That claim can be made in any case where the validity of the arbitration clause is in issue.

Here, where the parties had reached an agreement, the terms of which were reflected in the sales contract forwarded by Taritex, and the only issue is the validity or enforceability of the arbitration clause therein contained, Woodcrest was constrained by CPLR 7503 (subd [c]) to move within the prescribed 20-day period if it wished to challenge the validity or enforceability of the arbitration

clause. It admittedly failed to do so and is now barred from asserting that a valid agreement to arbitrate was not made.

Although, in light of our determination, we need not reach the issue, we do not believe, as Taritex contends, that Woodcrest waived its right to object to arbitration by voluntarily appearing in the arbitration proceeding.

Accordingly, the judgment of the Supreme Court, New York County (MARTIN EVANS, J.), entered September 8, 1982, which, *inter alia,* granted the petition to stay arbitration, should be reversed, on the law, with costs and disbursements, the petition denied and respondent's cross motion to compel arbitration granted.

KUPFERMAN, J. P., ASCH, SILVERMAN and MILONAS, JJ., concur.

Judgment, Supreme Court, New York County, entered on September 8, 1982, unanimously reversed, on the law, the petition denied and respondent-appellant's cross motion to compel arbitration granted. Appellant shall recover of petitioner-respondent $50 costs and disbursements of this appeal.