Joyce MORGAN, as executrix of the Estate of Dennis T. Morgan, deceased, Plaintiff,

v.

The NIKKO SECURITIES CO. INTERNATIONAL, INC., Defendant.

No. 87 CIV. 4868 (KC).

United States District Court, S.D. New York.

July 29, 1988.

Michael Devine, Kieffer & Hahn, New York City, for plaintiff.

Philip Potter, Jr., Davis, Polk & Wardwell, New York City, for defendant.

MEMORANDUM OPINION AND ORDER

CONBOY, District Judge.

The decedent was hired by the defendant, a registered securities firm, on or about November 1, 1985. He reported for work in New York on November 4, 1985. On that day the decedent filled out some employment forms and attended an orientation session. However, the department the decedent was to work in, Nikko's Government Securities Department, was still in the process of being organized. For that reason, the decedent was allowed to leave

early on the fourth, and told that it was not necessary to return to work until the office was ready to begin operations. The decedent returned to his home in Phoenixville, Pennsylvania. Two days later, the decedent died in Phoenixville, without having returned to work.

In January 1986, the plaintiff, then one of at least two executors of the decedent's estate (the "Estate"), commenced an action in the United States District Court, Eastern District of Pennsylvania, against the defendant and The Pacific Guardian Life Insurance Company, Ltd., complaining that the Estate is entitled to insurance and any other benefits recoverable under Mr. Morgan's contract with Nikko. The plaintiff commenced the action in her individual capacity. Therefore, the defendant could not move to compel arbitration, which it believes is the proper forum for resolution of any dispute with the Estate, in the first Pennsylvania action.

On March 31, 1986, Nikko served a Notice of Intent to Arbitrate the dispute with the Estate. Both the Estate's Executrix, the plaintiff here, and Pennsylvania counsel for the Estate acknowledged receipt of the Notice on April 3, 1986. The Estate responded by serving Nikko's Pennsylvania counsel with a motion for an injunction restraining Nikko from going forward with arbitration in New York. The motion papers refer explicitly to New York Civil Practice Law & Rules ("CPLR") section 7503(c), which requires that any application to stay arbitration be made within twenty days from service of the notice.

At oral argument before the district court, held April 17, 1986, the defendant raised the issue that the Estate was not a party to the action. *See* Transcript of Oral Argument at 13–17 (Apr. 17, 1986), Ex. C to Affidavit of Robert F. D'Emilia in Opposition to Application to Stay Arbitration and in Support of Cross–Motion to Dismiss Petition and Complaint, executed June 25, 1987. The court stated that at an initial meeting with the parties, there was a discussion concerning whether Joyce Morgan was the proper plaintiff in the action. *See id.* at 16. The court stated:

[I]t's my impression that there was an informal agreement that there was going to be a substitution for the Plaintiff by the administrator or executor of the Estate of the he [sic] decedent and that she was probably the same person, the same individual and that would be done promptly.

. . . .

I am going to say that unless Mrs. Morgan is appointed an executor [sic] or administratrix of the Estate by the first of May or—and the complaint is amended by the first of May, I am going to withdraw my stay[ of arbitration].

Transcript of Oral Argument at 16. Plaintiff's counsel informed the court that the reason for the delay in substituting the Estate was the fact the plaintiff was in the process of applying for "letters," which would grant her the power to act on behalf of the Estate. *See id.* at 15. Defendant's counsel reserved their client's rights regarding the arbitration issue. *See id.* at 25–26.

Apparently the plaintiff cured the defect, because the district court, on June 18, 1986, dismissed the suit for lack of personal jurisdiction over the defendant. *See* Ex. D to D'Emilia June 25, 1987 Aff. In August 1986, the plaintiff commenced a second action in the same court. In this action, the plaintiff was named in her capacity as Executrix. This action was dismissed as well; the court held that collateral estoppel barred relitigation of the personal jurisdiction issue, in a Memorandum and Order dated December 23, 1986. *See* Ex. E to D'Emilia June 25, 1987 Aff.

The New York Stock Exchange ("NYSE") mailed the plaintiff a copy of Nikko's April 10, 1986 Demand For Arbitration on or about March 30, 1987. Plaintiff's counsel responded, in a letter dated April 15, 1987, that the plaintiff refused to submit to arbitration "inasmuch as she believes that [the NYSE] lacks jurisdiction over the subject matter." *See* Ex. F to D'Emilia June 25, 1987 Aff. In a letter dated April 30, 1987, the NYSE advised plaintiff's counsel that the NYSE concluded that it had jurisdiction over the matter,

and that "absent a court order enjoining the arbitration, the case will proceed to an arbitration hearing pursuant to Exchange Rules." *See id.*

On June 19, 1987, the plaintiff commenced a New York CPLR Article 4 special proceeding to stay the arbitration Nikko had initiated by service of its March 31, 1986 Notice of Intent to Arbitrate, submitting to the New York Supreme Court a complaint, a petition, and an order to show cause. Nikko answered the petition and cross-moved to compel arbitration on June 25, 1987. On June 26, 1987, defendant's counsel appeared in Supreme Court and stated that they were ready to argue the motions. Plaintiff's counsel asked for, and received, an adjournment until July 10, 1987 to prepare a response to the cross-motion.

On July 9, 1987, defendant's counsel served a reply to the plaintiff's opposition to the cross-motion to compel arbitration. The next day, defendant's counsel appeared and submitted their motion papers. At that time, defendant's counsel informed the clerk that Nikko was in the process of removing the action to this court. Justice Tyler noted the removal to federal court in a decision dated July 10, 1987. *See* Ex. C to Affidavit of Robert F. D'Emilia, executed Aug. 24, 1987.

The action is before the court on plaintiff's motion to remand this action to New York Supreme Court, and on defendant's cross-motion to dismiss the petition and to dismiss or stay the complaint; to deny plaintiff's application for a stay of arbitration; and to compel arbitration. On September 11, 1987, the late Honorable Edward Weinfeld, U.S.D.J., held an evidentiary hearing on this matter.

## LEGAL ANALYSIS

### A. Motion to Remand

The plaintiff contends that the defendant waived its right to remove this action from state court by its conduct in responding to plaintiff's order to show cause in state court. The plaintiff relies on two cases, *Bolivar Sand Company v. Allied Equipment, Inc.*, 631 F.Supp. 171, 173 (W.D. Tenn.1986) and *Harris v. Brooklyn Dressing Corp.*, 560 F.Supp. 940, 942 (S.D.N.Y. 1983).

In turn, the defendant argues that the plaintiff is precluded from having the issue addressed, because the plaintiff failed to comply with New York CPLR section 7503(c) (McKinney 1980), which requires a party receiving an appropriate notice of intention to arbitrate, or demand to arbitrate, to apply to a court to stay arbitration within twenty days from receipt of the notice, or demand.[1] "The courts have no

---

1. Whether the employment contract between the parties is governed by state law or the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982) ("FAA"), *see, e.g., Bayma v. Smith Barney, Harris Upham & Co.*, 784 F.2d 1023, 1023, 1025 (9th Cir.1986) (written employment contract between member firm of the New York Stock Exchange and account executive, including arbitration clause, "involv[es] commerce," 9 U.S.C. § 2, so that question of arbitrability controlled by federal law, not state law); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeCaro*, 577 F.Supp. 616, 617, 619 (W.D.Mo.1983) (same principle applicable to employment contract between NYSE member firm and account executive trainee); *Fox v. Merrill Lynch & Co.*, 453 F.Supp. 561, 563–64 (S.D.N.Y.1978) (same principle applicable to employment contract between NYSE member firm and salesman); *cf. Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 701, 704 (2d Cir.1985) (agreement between registered representative and NYSE containing arbitration clause governed by FAA), *cert. denied*, 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986), a New York court would apply CPLR section 7503(c). That section's time period "has been construed as a statute of limitation." 2 McKinney's Session Laws (1973) at 2056 (citing *Jonathan Logan, Inc. v. Stillwater Worsted Mills*, 31 A.D.2d 208, 208, 210–11, 295 N.Y.S.2d 853, 854, 856–57 (1st Dep't 1968), *aff'd mem.*, 24 N.Y.2d 898, 249 N.E.2d 477, 301 N.Y.S.2d 636 (1969)); *see also John W. Cowper Co. v. Clintstone Properties, Inc.*, 120 A.D.2d 976, 977, 503 N.Y.S.2d 205, 206 (4th Dep't 1986) (mem.) (quoting Siegel, *Handbook on New York Practice*, § 593 at 848 (1978)). As the FAA does not contain any mechanism for seeking a stay of arbitration, a New York court would "borrow" CPLR 7503(c). *See generally DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 171, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983) ("resort to state law remains the norm for borrowing of limitations periods"). Use of CPLR section 7503(c) was noted in passing, but not ruled on, in *Prima Paint Corporation v. Flood & Conklin Mfg. Co.*, 360 F.2d 315, 316, 317–18 (2d

discretion to extend this time period to permit consideration of an untimely application." *Matarasso v. Continental Casualty Co.*, 56 N.Y.2d 264, 267, 436 N.E.2d 1305, 1306, 451 N.Y.S.2d 703, 704 (1982). If the twenty-day period is applicable, the plaintiff's application to the New York Supreme Court was untimely and would have had to have been dismissed. The plaintiff would not have been able to claim an estoppel in New York Supreme Court, based on her filings in the district court in Pennsylvania, because the Pennsylvania court lacked personal jurisdiction over the defendant. *See Ben Miller, Inc. v. Marcus Bros. Textiles, Inc.*, 59 A.D.2d 850, 850–51, 399 N.Y.S.2d 112, 112–13 (1st Dep't 1977) (mem.).

In *Matarasso, supra,* the New York Court of Appeals held that there is an exception to the twenty-day limitation period contained in section 7503(c). Specifically, the court held the limitation period inapplicable when the basis of the motion to stay arbitration "is that the parties never agreed to arbitrate, as distinct from situations in which there is an arbitration agreement which is nevertheless claimed to be invalid or unenforceable because its conditions have not been complied with." *Id.* at 266, 436 N.E.2d at 1305, 451 N.Y.S.2d at 704.

The defendant argues that *Matarasso* is inapposite, citing *Lane v. Abel–Bey,* 50 N.Y.2d 864, 407 N.E.2d 1337, 430 N.Y.S.2d 41 (1980)(mem.), *John W. Cowper Co. v. Clintstone Properties, Inc.,* 120 A.D.2d 976, 503 N.Y.S.2d 205 (4th Dep't 1986)(mem.), *Woodcrest Fabrics, Inc. v. Taritex, Inc.,* 98 A.D.2d 52, 469 N.Y.S.2d 728 (1st Dep't 1983), and *Gold Mills, Inc. v. Pleasure Sports, Inc.,* 85 A.D.2d 527, 444 N.Y.S.2d 656 (1st Dep't 1981)(mem.). While in two of those cases a party who had not signed a written agreement containing an arbitration clause was held barred from seeking a stay of arbitration due to failure to comply with CPLR section

7503(c)'s limitations period, *see Lane,* 50 N.Y.2d at 865–66, 407 N.E.2d at 1338, 430 N.Y.S.2d at 42; *Gold Mills, Inc.,* 85 A.D.2d at 527–28, 444 N.Y.S.2d at 656–57, the cases defendant cites are inapposite.

In *Lane,* a corporation was held bound where the individuals holding all the outstanding shares of stock signed a stockholders' agreement containing a broad arbitration clause and reciting that the corporation was a party to the agreement. *See Lane,* 50 N.Y.2d at 865–66, 407 N.E.2d at 1338, 430 N.Y.S.2d at 41–42; *see also Matarasso,* 56 N.Y.2d at 267 n.*, 436 N.E.2d at 1306 n.*, 451 N.Y.S.2d at 705 n.* (explaining that *Matarasso* is not contrary to *Lane* because in *Lane* "an agreement to arbitrate did exist among the shareholders of a corporation"). In *Gold Mills, Inc.,* the court held that the parties had agreed to arbitrate based on their prior dealings. *See Gold Mills, Inc.,* 85 A.D.2d at 528, 444 N.Y.S.2d at 657 ("There was an ongoing relationship between the parties, in which arbitration was the norm."); *accord, Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 845–46 (2d Cir.1987) (applying federal common law) ("the district court did not err in finding that in this long standing and on-going relationship Genesco agreed to arbitrate disputes arising under the unsigned sales confirmation forms").

In this action, the defendant concedes that the decedent never executed a written employment contract with the defendant containing an arbitration clause. *See* Petitioner's Memorandum in Support of Petition to Stay Arbitration and in Opposition to Cross-Motion at 2, *Morgan v. Nikko Sec. Co. Int'l Inc.,* No. 14026/87 (Sup.Ct.N.Y.Co. July 6, 1987); *see also* Tr. of Oral Argument, Sept. 8, 1987, at 19 (there is no written contract, only an exchange of correspondence). Thus, *Lane* is inapposite because in that action a written contract containing an arbitration clause, which the charged party knew of and in substance had agreed to, existed.[2]

Cir.1966), *aff'd,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

**2.** A written contract containing an arbitration clause existed in the cases of *John W. Cowper*

*Co. v. Clintstone Properties, Inc.* and *Woodcrest Fabrics, Inc. v. Taritex, Inc. See John W. Cowper Co.,* 120 A.D.2d at 976–77, 503 N.Y.S.2d at

■ *Gold Mills, Inc.* is inapposite because there is no "ongoing relationship" between the decedent and the defendant. Nikko, though, points to employment forms the decedent executed with other member firms of the NYSE.[3] These other forms, which the decedent was required to execute so that he could become a "registered representative," are copies of a single form entitled "Uniform Application For Securities Industry Registration," sometimes known by its number as "Form U–4." *See Chan v. Drexel Burnham Lambert Inc.,* 178 Cal.App.3d 632, 635–36, 223 Cal.Rptr. 838, 839 (2d Dist.Ct.App.1986). Form U–4 incorporates NYSE Rule 347, which provides:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.

N.Y.S.E. Guide (CCH) para. 2347; *see Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698, 704 (2d Cir.1985), *cert. denied,* 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986); *Chan,* 178 Cal.App.3d at 636, 223 Cal.Rptr. at 840.

■ As Judge Weinfeld stated and reiterated at the evidentiary hearing, *see* Tr. of Hearing, Sept. 11, 1987, at 37–38, the question whether an agreement to submit disputes to arbitration has been made is a legal one that the court must decide.[4] *See, e.g., Matarasso,* 56 N.Y.2d at 267, 436 N.E. 2d at 1306, 451 N.Y.S.2d at 704.[5] Although Nikko is entitled to prove that a trade usage exists, *see supra* note 3, Nikko's argument founders because there is no evidence that Nikko hired the decedent with the intent that he be one of its registered representatives. *See* Tr. of Oral Argument, Sept. 8, 1987, at 17 (remarks of Mr. Devine).[6] The most Nikko offers, the Affidavit of William J. Lee, Vice President and Secretary of The Nikko Securities Co. International, Inc., executed July 9, 1987, is purely speculative and self-serving. Further, it acknowledges implicitly that Nikko did not intend that the decedent act as a registered representative on its behalf. Lee's affidavit states:

> It is Nikko's practice to ensure that any new employee who is eligible to be registered as a registered representative is so registered promptly. If Mr. Morgan had informed Nikko of his prior registered representative status in his resume or employment applications, then Nikko would have filed the necessary papers (Form U–4) to have Mr. Morgan

206–07; *Woodcrest Fabrics, Inc.,* 98 A.D.2d at 55, 469 N.Y.S.2d at 730.

**3.** Under New York law, evidence of a trade usage may be used to prove that a written arbitration agreement exists. *See Schubtex, Inc. v. Allen Snyder, Inc.,* 49 N.Y.2d 1, 6, 399 N.E.2d 1154, 1156, 424 N.Y.S.2d 133, 135 (1979). Although federal common law applies in this case, *see infra* note 5, research has failed to disclose any case under federal common law accepting such evidence. The court opines that such evidence is acceptable. *Cf. Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 845–46 (2d Cir.1987) (applying federal common law) (approving district court's use of evidence of prior course of dealing to find that agreement to arbitrate disputes had been made).

**4.** For this reason, the opinion of the NYSE that this dispute is arbitrable is not binding on the court.

**5.** The law of this circuit is that the court must apply "federal law, which comprises generally accepted principles of contract law," to determine whether a contract including an agreement to arbitrate was formed by the parties. *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 845 (2d Cir.1987). *Contra Coastal Indus. v. Automatic Steam Prods.,* 654 F.2d 375, 377–78 (5th Cir. Unit B Aug. 1981); *Supak & Sons Mfg. Co. v. Pervel Indus.,* 593 F.2d 135, 137 (4th Cir.1979); *Universal Plumbing v. John C. Grimberg Co.,* 596 F.Supp. 1383, 1385 (W.D.Pa. 1984); *Chan v. Drexel Burnham Lambert, Inc.,* 178 Cal.App.3d 632, 639–40, 223 Cal.Rptr. 838, 842 (2d Dist.Ct.App.1986).

**6.** The following colloquy took place:
THE COURT: In what capacity was he employed by the Nikko company?
MR. DEVINE: It is not clear. It is only clear that he was employed.
Tr. of Oral Argument, Sept. 8, 1987, at 17.

registered promptly as a registered representative.

*Id.* at para. 9. Roy Tozer, manager of the qualifications and registrations department of the NYSE, testified that under the NYSE rules different types of employees of member firms are required to obtain NYSE approval. This means that the decedent could work for a member firm in a capacity other than that of a registered representative. Tr. of Hearing, Sept. 11, 1987, at 11–12.

NYSE Rule 345.16, also cited by Nikko, provides further evidence that Nikko had not formulated the intent that the decedent become a registered representative. That rule provides that

> [e]ach prospective registered representative or officer, in consideration of the Exchange's consideration of the applicant's application, shall sign an agreement, on a form prescribed by the Exchange, which includes a pledge that the registered representative or officer will abide by the Constitution and Rules adopted pursuant thereto as these now exist and as from time to time amended.

N.Y.S.E. Guide (CCH) para. 2345.16. Had Nikko intended that the decedent be registered, the company would have had the decedent fill out the form required by this rule while he "complete[d] several application forms" on November 4, 1985. *See* Lee Aff. at para. 3. Because there is no proof Nikko hired the decedent to be a registered representative, there is no basis to find that the decedent was bound by trade usage and that Rule 347 applies notwithstanding the absence of a completed Form U–4.

Just as Rule 347 is not applicable, neither is another rule that the defendant has not specifically argued, but which is included as part of Exhibit D to the Affidavit of Philip C. Potter, Jr., executed Aug. 24, 1987, and which has been argued in a similar case, Rule 600. That rule provides, in relevant part:

> (a) Any dispute, claim or controversy between a customer or non-member and a member, allied member, member organization and/or associated person arising in connection with the business of such member, allied member, member organization and/or associated person in connection with his activities as an associated person shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc. as provided by any duly executed and enforceable written agreement or upon the demand of the customer or non-member.

N.Y.S.E. Guide (CCH) para. 2600. An employee who is not a registered representative comes within the ambit of this rule, as a "non-member." *See McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co.*, 114 A.D. 2d 165, 166–72, 498 N.Y.S.2d 146, 148–51 (2d Dep't 1986). *Compare* 15 U.S.C. § 78c(3)(A) (defining the term "member") *with* 15 U.S.C. § 78c(18) (defining the term "person associated with a broker or dealer" or "associated person of a broker or dealer" to include "any employee of such broker or dealer"). This rule is not applicable because its conditions are not satisfied. There must be either a "duly executed and enforceable written agreement" calling for arbitration, or a "demand [by] the ... non-member." As previously stated, there is no written agreement in this case. Nor has the Estate demanded arbitration; in fact, the opposite is true.

The defendant argues in the alternative that Article VIII of the NYSE Constitution by itself is sufficient to bind the Estate to arbitration. The defendant does not cite any case in support of this proposition. The court disagrees with the defendant, based on a guide to statutory interpretation.

Article VIII, section one of the NYSE Constitution provides:

> Any controversy between parties who are members, allied members, member firms or member corporations and any controversy between a non-member and a member or allied member or member firm or member corporation, arising out of the business of such member, allied member, member firm or member corporation, or the dissolution of a member firm or member corporation, shall at the instance of any such party, be submitted

for arbitration, *in accordance with the provisions of the Constitution and the Rules of the Board of Directors.*

*See* Potter Aff. at para. 10 (emphasis added).[7] If the court accepted the defendant's view that this is sufficient to have bound the decedent, and consequently his Estate, to arbitration, then Rule 600 would be inoperative to the extent that the rule does not allow a member firm, allied member, or member organization to demand arbitration of a non-member who has not executed an enforceable written agreement. *See* discussion of Rule 600 *supra* at pages 797–98.

When construing Article VIII, the court is obliged to give effect, if possible, to every word used. *See, e.g., Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985); *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); *accord, Sanders v. Winship,* 57 N.Y.2d 391, 395–96, 442 N.E.2d 1231, 1233–34, 456 N.Y.S.2d 720, 722–23 (1982); *Albano v. Kirby,* 36 N.Y.2d 526, 530, 330 N.E.2d 615, 618–19, 369 N.Y.S.2d 655, 659 (1975). Article VIII can be harmonized with Rule 600 only if it is construed to mean "any party who is permitted by the appropriate rule to demand arbitration."[8] Therefore, defendant's reliance on Article VIII, section one, standing by itself, is misplaced. It did not bind the decedent to arbitration with Nikko over this dispute, because it must be read in conjunction with Rule 600.

The defendant makes a third argument, an estoppel argument, in support of its position that the decedent agreed to arbitration. In substance, Nikko argues that if the decedent had been truthful and disclosed his prior multiple registrations, Nikko would have moved immediately to re-register the decedent with the NYSE. *See supra* discussion at pages 796–97 (Lee Aff.

para. 9). Thus, according to the defendant, Rule 347 would apply. This argument is unavailing.

The defendant, as the party asserting the estoppel, has the burden of establishing all of its elements. *See Lyng v. Payne,* 476 U.S. 926, 935, 106 S.Ct. 2333, 2339, 90 L.Ed. 2d 921 (1986) (to prevail, party claiming benefit of estoppel must demonstrate presence of estoppel's traditional elements); *United States v. Asmar,* 827 F.2d 907, 912 (3d Cir.1987) ("The burden of proof is on the party claiming estoppel."). One of the elements of an estoppel is prejudice to, or detrimental reliance by, the party claiming the benefit of the estoppel. *See Lyng,* 476 U.S. at 935, 106 S.Ct. at 2340 ("[a]n essential element of any estoppel is detrimental reliance on the adverse party's misrepresentations"); *Deitrick v. Greaney,* 309 U.S. 190, 197, 60 S.Ct. 480, 483, 84 L.Ed.2d 694 (1940) ("In a strict and technical sense an estoppel arises only when a misrepresentation has prejudiced another who has relied upon it.") (dictum); *El Ranco, Inc. v. First Nat'l Bank,* 406 F.2d 1205, 1210 (9th Cir.1968) ("Prejudice is an essential element of an estoppel."), *cert. denied,* 396 U.S. 875, 90 S.Ct. 154, 24 L.Ed.2d 133 (1969). Even assuming that the defendant would have had the decedent fill out Form U–4 on November 4, 1985, and assuming that the defendant would have delivered the completed form to the NYSE that same day, Nikko has not shown the existence of prejudice to it.

Rule 347 is not applicable until an application is approved by the NYSE. *See Reiner v. Scandinavian Sec. Corp.,* 107 Misc.2d 805, 809–10, 436 N.Y.S.2d 528, 531 (Sup.Ct.1980) ("acceptance of the application, rather than its filing, triggers the obligation to arbitrate"); *id.* at 811–13, 436 N.Y.S.2d at 532 (motion to reargue). The defendant failed to introduce any evidence that had it submitted the decedent's Form

---

**7.** The NYSE Constitution has been amended since the time this dispute arose. The amendments to the article on arbitration are immaterial to this action. *See* Affidavit of Philip C. Potter, Jr., executed Aug. 24, 1987, at para. 11.

**8.** In *McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Company,* 114 A.D.2d 165, 498 N.Y.S.2d 146 (2d Dep't 1986), the employees relying on Rule 600, not the employer, sought to compel arbitration. *See id.* at 168, 171, 498 N.Y.S.2d at 149, 151. The court granted the employees' motion. *See id.* at 172, 498 N.Y.S.2d at 151.

U–4 on November 4, the registration would have been approved by November 6.[9] Thus, Nikko failed to demonstrate prejudice resulting from the decedent's misrepresentations. It has failed to establish its estoppel defense.

For these reasons, the court concludes that the decedent never agreed to arbitrate this dispute with Nikko. Therefore, *Matarasso* is on point. The plaintiff was not subject to CPLR section 7503(c)'s twenty-day statute of limitation in moving to stay the arbitration. Therefore, the question must be addressed whether the defendant waived its right to remove this action from the state court.

■ *Harris v. Brooklyn Dressing Corporation, supra,* is the most closely analogous case. In *Harris,* the petitioner brought a special proceeding to confirm an arbitration award in New York State Supreme Court. 560 F.Supp. at 941. The respondent answered the petitioner's complaint, "and sought affirmative relief in a counterclaim which sought to modify or vacate the award." *Id.* at 942. The respondent removed the action to federal court at a later time. *Id.*

The federal court granted petitioner's motion to remand. *Id.* The court stated that "a party who voluntarily submits to the jurisdiction of a state court by filing a permissive counterclaim thereby waives the right of removal." *Id.* (citing cases). The court went on to state that under New York law all counterclaims are permissive. *See id.* The court rejected the respondent's argument that strategically it had to interpose the counterclaim, or it might be forced to raise it in a separate special proceeding. *See id.*

*Harris* is distinguishable from the present case. By requesting, in the alternative, modification of the arbitral award, the respondent in *Harris* requested that the court intervene on its behalf, to do something other than to merely deny the petitioner the relief it requested. *See* Siegel, *Handbook on New York Practice,* § 604 at 867 (1978) (CPLR § 7511(c)(2) "enables the court to retain an award on an arbitrable matter while striking out anything awarded on a matter not arbitrable").

In this action, though, the defendant's cross-motion to compel arbitration actually was superfluous. By serving a notice of intent to arbitrate, pursuant to CPLR section 7503(c), the defendant placed on the plaintiff the onus of moving before a court for a determination of the three threshold questions courts must resolve before a challenged arbitration proceeding may go forward—"whether the parties made a valid agreement to arbitrate, whether if such an agreement was made it has been complied with, and whether the claim sought to be arbitrated would be barred by limitation of time had it been asserted in a court of the State." *County of Rockland v. Primiano Constr. Co.,* 51 N.Y.2d 1, 6–7, 409 N.E.2d 951, 953, 431 N.Y.S.2d 478, 480–81 (1980). If the plaintiff did not move to stay, under ordinary circumstances she would be precluded from objecting on any of these three grounds when and if the defendant moved to confirm an arbitral award in its favor. *See* CPLR § 7511 practice commentaries C7511:2 (McKinney 1980). If, on the other hand, the plaintiff had moved to stay arbitration, and the stay had been denied, she likewise would not be allowed to raise these questions in a proceeding to confirm an arbitral award in the defendant's favor. *See* 5 N.Y. Jur.2d Arbitration & Award § 143 at 297 (1980); *cf. Potter v. Motor Vehicle Accident Indemnification Corp.,* 73 A.D.2d 787, 787–88, 423 N.Y.S.2d 703, 704–05 (4th Dep't 1979) (mem.) (order staying arbitration *res judicata* in subsequent declaratory judgment action); *Reo Garment, Inc. v. Jason Corp.,* 6 A.D.2d 401, 402–03, 178 N.Y.S.2d 368,

---

**9.** The court takes judicial notice that the application processed most quickly in *Reiner v. Scandinavian Securities Corporation* was under review at least 34 days, and possibly as long as 44 days, before approval was given by the NYSE. *See Reiner,* 107 Misc.2d at 811–12, 436 N.Y.S.2d at 532. The longest an application was under review was at least 88 days, and possibly as long as 98 days. *See id.,* 436 N.Y.S.2d at 532. The court rejected the argument that the retroactive "effective" date of registration, rather than the actual date of acceptance, is the critical date for arbitration purposes. *See id.* at 812–13, 436 N.Y.S.2d at 532.

**800**

369–71 (1st Dep't 1958) (per curiam) (denial of motion for stay of arbitration *res judicata* in second action asking for injunction to stay same arbitration), *aff'd mem.*, 6 N.Y. 2d 725, 158 N.E.2d 505, 185 N.Y.S.2d 812 (1959).

Had the defendant served a notice to arbitrate that did not have the effect of forcing the plaintiff to act, *i.e.*, one not conforming to CPLR section 7503(c), the defendant could have achieved the exact same result by later moving, pursuant to CPLR section 7503(a), to compel arbitration. *See* Siegel, *Handbook on New York Practice*, § 592 at 845 (1978) (if party brings proceeding to compel, and prevails, other party "is foreclosed from later resisting the award based on the threshold questions"). In fact, a party that is granted an order "compelling" arbitration is not required to initiate the arbitration, if it is not the aggrieved party. *See id.*

Therefore, unlike the situation in *Harris*, the defendant here did not seek affirmative relief by filing its cross-motion. Denial of the plaintiff's motion would have sufficed to give the defendant all the relief it could achieve through its cross-motion. *Cf. Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d at 705 (applying federal common law) ("the district court's order denying Smiga's motion to stay arbitration was essentially the equivalent of an order by the district court to compel arbitration"). In consequence, the defendant did not waive its right to remove this action to federal court. The matter properly is before this court.[10] The motion to remand is denied.

**B. Motion to Compel Arbitration**

The preceding discussion of the question whether the decedent agreed to arbitrate disputes with the defendant, reaching the conclusion that the decedent did not agree to arbitration, *see supra* discussion at pages 795–99, disposes of the defendant's motion to compel arbitration of this dispute. The motion to compel is denied. Ar-

bitration is stayed. The motion to stay this action is denied.

### CONCLUSION

Plaintiff's complaint will be heard before the court. A pretrial conference will be arranged, at the initiation of the court, to discuss the matter further.

SO ORDERED.

---

**10.** The defendant removed this action pursuant to 28 U.S.C. section 1441(a), basing its action on the inclusion in the complaint of a cause of

action based on the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. sections 1001–1461.