**SANDVIK, INC., Plaintiff,**

v.

**Henry G. LIBBY, Defendant.**

**No. 90 Civ. 6989 (JES).**

United States District Court, S.D. New York.

April 26, 1991.

Carter, Ledyard & Milburn, New York City (Robert R. Salman, Beth D. Jacob, Robert C. Malaby, of counsel), for plaintiff.

Kreindler & Relkin, P.C., New York City (Donald L. Kreindler, Jody S. Layne, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff in the above-captioned action moves for a preliminary injunction staying an arbitration proceeding initiated by the defendant. The defendant cross-moves to stay the action in favor of arbitration. For the reasons that follow, the plaintiff's motion is denied and the defendant's cross-motion is granted.

## FACTS

From 1976 to 1982, Sandvik, Inc. ("Sandvik") owned a manufacturing plant in Danville, Virginia (the "Danville Plant"). *See* Affidavit of Robert R. Salman at ¶ 25 ("Salman Affid."). The Danville Plant was operated by Disston, Inc., a wholly owned subsidiary of Sandvik. *Id.* On July 28, 1980, Henry G. Libby ("Libby") was hired by Sandvik to be the Chief Executive Officer of the Disston Division. *Id.* On November 12, 1982, pursuant to a Sale of Assets Agreement (the "Sales Agreement"), Disston Inc. sold the Danville Plant to the Disston Company, a corporation wholly owned by Libby, for $5,162,500. *See* Salman Affid. at ¶ 11–12. The Sales Agreement was signed by Donald E. Debacher for Disston, Inc. and Sandvik, as well as by Libby, for the Disston Company and in his own behalf. *See* Salman Affid. at Exhibit B, p. 41. Pursuant to Section 13 of the Sales Agreement, Libby unconditionally guaranteed five obligations of the Disston Company. These obligations include: (1) payment of the cash portion of the purchase price; (2) payment of money to Sandvik under the Deed of Trust; (3) payment of money to Sandvik under the Installment Note; (4) any post-closing adjustments to the purchase price; and (5) the

time, date, and place of the closing. *Id.* at 36. Additionally, Section 14 of the Sales Agreement contains an arbitration clause which provides that "any controversy or claim arising out of or relating to [the] Agreement or the breach hereof shall be settled and finally determined by arbitration in New York." [1] *Id.* at 37.

On November 29, 1982, the Disston Company executed a Promissory Note (the "Note") promising to pay Sandvik the purchase price of the Danville Plant plus interest. *See* Salman Affid. at ¶ 12. The Note was signed by Libby as President of the Disston Company and individually, *id.* at Exhibit C, p. 7, and was unconditionally guaranteed by him. *Id.* at p. 5. This Note is secured by a Deed of Trust which was guaranteed by Libby in the Sales Agreement. *See* Salman Affid. at ¶ 28.

In 1985, the Disston Company was in default on its obligation and, consequently, modification agreements were entered into in 1985 and 1987 which rescheduled the principal payments. *Id.* at ¶ 13. Subsequently, on December 30, 1987, Libby signed a letter (the "Letter Agreement") in which he agreed that if a majority of the Disston Company's stock or substantially all of its assets were sold, Libby or the purchaser would repay to Sandvik all money owed under the Note within ninety days after such a sale. *Id.* at ¶ 14.

In October 1987, Libby entered into negotiations to sell the Disston Company to James Neill Holdings (the "James Neill Deal"). *See* Memorandum of Law in Support of Sandvik Inc.'s Motion for a Preliminary Injunction at 6 ("Sandvik Memorandum"). According to Libby, this agreement contained as a closing condition that an environmental audit of the Danville Plant would not disclose serious environmental problems. *See* Affidavit of Donald L. Kreindler at ¶ 22 ("Kreindler Affid."). Subsequently, an audit reported severe problems associated with the disposal of

---

**1.** Section 1(i) of the Agreement also contains a provision in which the parties agreed that the Disston Company was not liable or responsible for "any environmental claims, causes of action or liabilities arising from occurrences prior to

the Closing...." Under this section, Sandvik also agreed to indemnify and hold harmless the Disston Company for any loss arising from any environmental claim.

hazardous waste on the property which allegedly occurred during Sandvik's ownership of the plant. Consequently, Neill declined to go forward with the acquisition. *Id.*

Upon learning of these environmental problems, the Disston Company instituted two actions in the United States District Court for the Western District of Virginia against Sandvik alleging: 1) violations of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 et seq. (1988), and the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 et seq. (1988); 2) breach of the Sales Agreement; and 3) negligence by Sandvik in causing the environmental problems. *See* Salman Affid. at 45 & 49. Sandvik moved to stay these actions and to compel arbitration claiming that all of the Disston Company's claims arose out of or related to the Sales Agreement. *Id.* at 46. The court granted Sandvik's motions and directed arbitration. *Id.* at 51.

On September 18, 1990, the Disston Company and Libby served Sandvik with a Demand for Arbitration asserting various claims which allegedly arose out of or related to the Sales Agreement. Kreindler Affid. at 25. Subsequently, Sandvik instituted this action against Libby asking for: (1) the amount of $3.9 million allegedly owed to Sandvik under the Note;[2] (2) a declaration that Libby's guarantee under the Note is valid and enforceable; and (3) an injunction against the arbitration instituted by Libby. *See* Salman Affid. at ¶ 9 & Exhibit A.

## DISCUSSION

"[A]rbitration should be compelled 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 522 (2d

Cir.1980) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). Moreover, federal arbitration policy requires courts to "construe arbitration clauses as broadly as possible," *David L. Threlkeld & Co., v. Metallgesellschaft Ltd. (London),* 923 F.2d 245, 250 (2d Cir.1991) (quoting *S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc.,* 745 F.2d 190, 194 (2d Cir.1984)), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

■ Tested by that standard, this case must be stayed in favor of arbitration. All of the claims at issue here relate to matters arguably encompassed by the broad arbitration clause set forth in the original purchase agreement to which Libby, contrary to the assertions made by Sandvik, was unquestionably a party. *See Michele Amoruso E Figli v. Fisheries Dev. Corp.,* 499 F.Supp. 1074, 1080 (S.D.N.Y.1980) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 406, 87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967)) (the language "arising out of or relating to this agreement" has been labeled a "broad arbitration clause"). Sandvik's attempt to treat the extension agreements as separate and distinct from the underlying obligations initially incurred ignores the reality of what was obviously a connected series of transactions. Indeed, strong evidence supporting this view is Sandvik's own successful attempt to stay Disston Company's Virginia action based upon breaches of the purchase agreement in favor of arbitration. In any event, it cannot be said with any positive assurance that the disputes at issue are not subject to arbitration, and the Court must, therefore, consistent with the

---

**2.** Sandvik alleges that Disston Company is in breach of the Letter Agreement because Disston issued a $4,500,000.00 convertible subordinated note to Rule Industries ("Rule") which was convertible at Rule's option into two-thirds of the outstanding shares of Disston's common stock.

This transaction, Sandvik claims, is a sale of substantially all of Disston's assets as defined in the Letter Agreement and thus all of the remaining debt under the Note is due. *See* Sandvik Memorandum at 6–7.

authorities referred to above, resolve any dispute as to arbitrability in favor of arbitration.

█ The Court rejects Libby's argument that Sandvik is barred under New York law from contesting the arbitrability of Libby's claims because Sandvik failed to move to stay arbitration within twenty days after service of Libby's Demand for Arbitration, as required by New York's Civil Practice Law and Rules § 7503(c) (McKinney 1980). *Aetna Life & Casualty Co. v. Stekardis*, 34 N.Y.2d 182, 185, 313 N.E.2d 53, 356 N.Y.S.2d 587 (1974); *See In re Arbitration between Daniel Matarasso and Continental Casualty Co.*, 56 N.Y.2d 264, 267, 436 N.E.2d 1305, 451 N.Y.S.2d 703 (1982). Where, as here, a case arises under the Federal Arbitration Act[3], federal, and not state, arbitration law applies. That requirement is therefore not applicable. *See Rothberg v. Loeb, Rhoades & Co.*, 445 F.Supp. 1336, 1339 (S.D.N.Y.1978) (holding that since there is no comparable time limitation in the Federal Arbitration Act, federal law applies and plaintiffs are not barred by any time limits set forth in CPLR section 7503(c)); *accord Michele Amoruso E Figli v. Fisheries Dev. Corp.*, 499 F.Supp. 1074, 1080 n. 9 (S.D.N.Y.1980); *see also Masthead Mac Drilling Corp. v. Fleck*, 549 F.Supp. 854 (S.D.N.Y.1982). *But see Morgan v. Nikko Sec. Co. Int'l*, 691 F.Supp. 792, 794 n. 1 (S.D.N.Y.1988).

## CONCLUSION

Sandvik's motion for a preliminary injunction staying the arbitration is denied and Libby's cross-motion to stay this action is granted. The Clerk of the Court is directed to enter judgment accordingly and to close the above-captioned action.

It is SO ORDERED.

---

**3.** The Sales Agreement here involves commerce "among the several states" as defined in Section 1 of the Federal Arbitration Act because the sellers are Delaware corporations and the purchaser is a North Carolina corporation. *See* Salman Affid. at Exhibit B, p. 1. *See Lawson*

*Fabrics, Inc. v. Akzona, Inc.*, 355 F.Supp. 1146, 1148 (S.D.N.Y.), *aff'd*, 486 F.2d 1394 (2d Cir. 1973) (contract for sale of goods from seller in North Carolina to buyer in New York represents interstate commerce "in its most basic form").